Edward RONWIN, Appellant,

v.

Warren B. DUNHAM, Gordon A. Sweitzer, and Alton B. Chrystal, Appellees.

No. 86–2123.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1987.

Decided May 13, 1987.

Rehearing Denied June 4, 1987.

■■■■■■■■■■■

---

Edward Ronwin, Urbandale, Iowa, pro se.

Mark Hunacek, Asst. Atty. Gen., Ames, Iowa, for appellees.

Before McMILLIAN and WOLLMAN, Circuit Judges, and WRIGHT,[*] District Judge.

WOLLMAN, Circuit Judge.

Edward Ronwin appeals the district court's[1] order dismissing his action under 42 U.S.C. § 1983 and state law arising from the suspension of his driver's license and motor vehicle registration. The issue in this appeal is whether the district court correctly abstained from decision based on the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We affirm.

Ronwin was cited for speeding on three occasions, all within a sixty-day period in early 1986. The Iowa Department of Transportation (IDOT) notified Ronwin that pursuant to Iowa Code § 321.210[2] he would have to attend a driver improvement program or have his driver's license suspended. Ronwin objected to this action because one of the speeding citations had been out-of-state, and requested a hearing. The IDOT notified Ronwin that it would hold a hearing. In accordance with its procedures, however, it suspended Ronwin's driver's license and motor vehicle registration before any hearing was held.[3] The driver's license suspension was automatically stayed.[4] Ronwin then brought this action against three IDOT officials in the district court seeking damages, declaratory relief, and injunctions for violations of his constitutional rights and state law.[5] Ronwin submitted with his complaint a motion for a temporary restraining order to prohibit the IDOT from holding the scheduled hearing or from taking any other action. The motion for a temporary restraining order was dropped when the IDOT postponed the hearing. The district court held a hearing on Ronwin's request for a preliminary injunction and issued an order enjoining only the suspension of the motor vehicle registration. Ronwin then moved for a preliminary injunction to enjoin the IDOT hearing, which had been rescheduled, and for partial summary judgment, attorney's fees, and a permanent injunction. The district court denied all of Ronwin's

---

[*] The HONORABLE SCOTT O. WRIGHT, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation.

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

2. Iowa Code Ann. § 321.210 (West 1985 & Supp. 1987) provides in part: "The [IDOT] is hereby authorized to establish rules * * * for the suspension of the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that under the rules adopted by the department the licensee: * * * 3. Is an habitual violator of the traffic laws."

    The IDOT's Rule 13.13(8)(b) provides that a "habitual violator of the traffic laws" is a person convicted of three moving violations within a twelve-month period, and that habitual violators must attend a driver improvement school.

3. Iowa Code Ann. § 321A.17(1) (West Supp. 1987) provides in part: "Whenever the director, under any law of this state, suspends or revokes the license of any person * * *, the director shall also suspend the registration for all motor vehicles registered in the name of the person * * *."

4. The IDOT's stay of the suspension of Ronwin's driver's license has continued throughout the pendency of this litigation. Thus, Ronwin's driving privileges have not yet been affected by the IDOT's actions.

5. Ronwin alleges that the IDOT's actions violated his due process and equal protection rights under the fifth and fourteenth amendments and his right to petition for redress of grievances under the first amendment, and that the IDOT's actions constitute cruel and unusual punishment in violation of the eighth amendment. He also alleges that the Iowa statute and the IDOT rule involved here are unconstitutionally vague, that the license proceeding subjects him to double jeopardy because he was already convicted of the underlying traffic violations, that the IDOT rule is inconsistent with its authorizing statute and is an improper delegation of legislative authority, and that counting non-Iowa traffic violations violates principles of federalism.

motions and dismissed his claims, concluding that it should abstain from decision of the federal claims based on the abstention doctrine of *Younger v. Harris*, 401 U.S. at 37, 91 S.Ct. at 746.[6]

In *Younger*, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding except when an injunction is necessary to prevent great and immediate irreparable injury. The Court's decision was based on a long-standing public policy against federal court interference with pending state judicial proceedings. According to the Court, this policy is founded on the basic doctrine that courts of equity should not interfere with criminal prosecutions and on the "more vital consideration," *id.* at 44, 91 S.Ct. at 750, of the principles of comity and federalism. The Court stated that the notion of comity includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* The concept of federalism, or, in the words of Justice Black, " 'Our Federalism,' " *id.*, was viewed as representing "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.*

The Court has recognized that the policy concerns addressed in *Younger* are equally applicable to certain pending state proceedings other than criminal proceedings. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and in a number of subsequent cases, *see Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court concluded that *Younger* abstention is applicable to pending civil proceedings. The Court has also found *Younger* applicable to pending state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). The Court's recent decision in *Dayton Christian Schools*, 106 S.Ct. at 2718, provides useful guidance in this case. There the Court held that the federal courts should have abstained where a religious school brought a civil rights action against a state civil rights commission to enjoin the commission from proceeding against the school on a sex discrimination complaint brought by one of the school's teachers. The Court relied on two factors to determine whether abstention was required: the importance of the state interest, and the existence of an adequate opportunity to raise constitutional claims. *Id.* 106 S.Ct. at 2723.

We believe that the *Younger* doctrine is fully applicable to the pending state administrative proceeding in this case.[7] Both of

---

**6.** The district court also found that it was barred from adjudicating Ronwin's state law claims by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). We find no need to reach the *Pennhurst* issue because once the federal claims are dismissed on *Younger* grounds we can perceive no basis for retaining the pendent claims. *See Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

**7.** In *Dayton Christian Schools*, the Court found that the application of *Younger* to pending state administrative proceedings was consistent with the holding of *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982), that litigants need not exhaust their administrative remedies prior to bringing a section 1983 suit in federal court. *Dayton Christian Schools*, 106 S.Ct. at 2723 n. 2. The Court distinguished *Patsy* on the grounds that in *Dayton Christian Schools* the proceedings were coercive rather than remedial, had begun before

the factors discussed in *Dayton Christian Schools* counsel in favor of abstention here. First, the state's interest in the safety of its roadways is considerable. The Supreme Court has recognized as much in other contexts. In *Mackey v. Montrym*, 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979), the Court stated that the state has a "paramount interest * * * in preserving the safety of its public highways." *See also Dixon v. Love*, 431 U.S. 105, 114, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172 (1977) ("important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard"). Although criminal proceedings implicate state interests of the highest order, *see Younger*, 401 U.S. at 43, 91 S.Ct. at 750, the state interest at issue here is consistent with other kinds of state interests the Court has found sufficient to invoke abstention. *See Dayton Christian Schools*, 106 S.Ct. at 2723 (interest in eliminating prohibited sex discrimination); *Middlesex County Ethics Comm.*, 457 U.S. at 434, 102 S.Ct. at 2522 (interest in maintaining and assuring the professional conduct of attorneys); *Trainor*, 431 U.S. at 444, 97 S.Ct. at 1918 (interest in safeguarding fiscal integrity of public assistance programs). Moreover, we view the IDOT administrative proceeding as "in aid of and closely related to criminal statutes." *Huffman*, 420 U.S. at 604, 95 S.Ct. at 1208. The state initiated the proceeding, and the proceeding is premised on Ronwin's violations of state traffic laws, for which the state imposes criminal penalties. *See* Iowa Code Ann. § 321.482 (West 1985). Thus, as in *Huffman*, if federal courts were to interfere with the IDOT proceeding, the offense to the state interest "is likely to be every bit as great as it would be were this a criminal proceeding." *Huffman*, 420 U.S. at 604, 95 S.Ct. at 1208; *see Central Ave.*

*News, Inc. v. City of Minot*, 651 F.2d 565, 568 (8th Cir.1981).

Ronwin also will have an adequate opportunity to raise his constitutional claims in the state proceeding. In *Dayton Christian Schools*, 106 S.Ct. at 2724, the Court found that an adequate opportunity to raise constitutional claims existed when those claims could be raised in state court review of administrative proceedings. Iowa law provides that judicial review of IDOT actions "may be sought in accordance with the terms of the Iowa administrative procedure Act." Iowa Code Ann. § 321.215 (West Supp.1987). The Iowa administrative procedure act specifically provides for judicial review of agency action for constitutional violations. *Id.* § 17A.19(8)(a) (West 1978). Furthermore, the Iowa courts have shown no reluctance to reach constitutional claims in actions for judicial review of IDOT administrative proceedings. *See, e.g., Westendorf v. Iowa Dep't of Transp.*, 400 N.W.2d 553 (Iowa 1987); *Knowles v. Iowa Dep't of Transp.*, 394 N.W.2d 342 (Iowa 1986).

Finally, we believe that one further factor militates in favor of abstention in this case. Several of Ronwin's constitutional challenges to the state statute and IDOT rule involved here would require the federal courts to interpret those state provisions. This implicates the concern, expressed most recently by the Supreme Court in *Pennzoil*, —— U.S. at ——, 107 S.Ct. at 1526, *see also Moore*, 442 U.S. at 428, 99 S.Ct. at 2379, that federal courts should avoid unwarranted determination of federal constitutional questions. It is possible that the Iowa courts would interpret the state law provisions in a way that would foreclose the need for review of at least some of Ronwin's federal constitutional claims. These circumstances provide an additional reason for abstention in this case.[8]

there was any substantial advancement in the federal action, and involved an important state interest. *Id.* Because this action partakes of the same characteristics, our holding does not conflict with *Patsy*.

**8.** Ronwin has not argued that he should be allowed to proceed with his federal action under one of the exceptions to *Younger*, and in any event we find no indication that the state proceeding was brought for purposes of harassment or in bad faith, *Younger*, 401 U.S. at 49, 91 S.Ct. at 753, or that even if in good faith the state proceeding will cause Ronwin irreparable injury. *Id.* at 53, 91 S.Ct. at 754.

The order of the district court is affirmed.