**Shannon NEWELL, Plaintiff,**

v.

**ROLLING HILLS APARTMENTS; ACN–Fort Dodge Partners, L.P.; ACN–Fort Dodge Partners II, L.P., Defendants.**

**No. C 01–3025–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

March 15, 2001.

Blake Porter, Blake Porter Law Office, Fort Dodge, IA, for plaintiff.

Mark Thomas, Grefe & Sidney, Des Moines, IA, for defendants.

MEMORANDUM OPINION AND OR-
DER REGARDING PLAINTIFF'S
MOTION FOR TEMPORARY RE-
STRAINING ORDER AND PRE-
LIMINARY INJUNCTION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. **INTRODUCTION** ........................................................1027.
   A.   *Factual Background* ...............................................1027
   B.   *Procedural Background* ...........................................1029

II. **LEGAL ANALYSIS** ..................................................1031
   A.   *Jurisdictional Doctrines* ..........................................1032
   B.   *Younger Abstention* ..............................................1034
       1.   *The doctrine and the rationale* ................................1034
       2.   *Requirements for abstention* ..................................1035
           a.   *Ongoing state judicial proceedings* ........................1035
           b.   *Important state interests* ....................................1036
           c.   *Adequate opportunity to raise constitutional challenges* ........1036
               i.   *Iowa law* .........................................1037
               ii.   *Other states* .......................................1038
           d.   *"Exceptional circumstances"* ................................1039
       3.   *Other federal precedent* ......................................1039
       4.   *Summary* .....................................................1039
   C.   *Rooker–Feldman Doctrine* ......................................1040

III. **CONCLUSION** ....................................................1041

Can (or should) this court hear the plaintiff's motion for a temporary restraining order or preliminary injunction to restrain or enjoin the defendants from evicting the plaintiff and her five-month-old biracial child from her federally subsidized housing on the ground that her eviction is racially discriminatory? Although the plaintiff placed only the merits of preliminary injunctive relief before this court, the court *sua sponte* raised the question of its jurisdiction to hear this matter in light of pre-existing state court eviction proceedings. Because this federal court is a court of limited jurisdiction, *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), it must be satisfied that the threshold requirement of subject matter jurisdiction has been satisfied.

## I. INTRODUCTION

### A. Factual Background

The factual background for the plaintiff's motion for a temporary restraining order or preliminary injunction is necessarily drawn from the allegations in the plaintiff's complaint and accompanying affidavit. Plaintiff Shannon Newell, a single parent, resides with her five-month-old biracial child at the Rolling Hills apartment complex in Fort Dodge, Iowa.[1] Newell receives a "Section 8" HUD housing subsidy, pursuant to 42 U.S.C. § 1437f, based on

---

1. In her brief in support of her motion for a temporary restraining order or preliminary injunction, Newell explained that she is herself biracial, but that she considers her ethnicity to be white, while she perceives the ethnicity of her biracial daughter to be African–American.

financial need, which pays all but $30 of her monthly rent at Rolling Hills. Newell's daughter was born shortly after she moved into her apartment at Rolling Hills.

Since the birth of her daughter, Newell contends that she has been subjected to an attempt by the management of Rolling Hills to have her evicted, which she alleges is motivated by the facts that her child is biracial and that she is visited at her apartment by friends who are African–American. This attempt to evict her for racially discriminatory reasons, Newell asserts, consists of the following:

A. [Newell] received her first Notice of Non-compliance [with her lease] when she complained of neighboring noise. Immediately thereafter she was served with a notice concerning noise, when in fact no one other than she and her child had been at the apartment. This notice was also concerning a bag of garbage which the plaintiff had set outside, and then went to find someone to be with her baby while she took the garbage out. The garbage sack would have been unattended for less than ten minutes.

B. The current notice concerning garbage is done only in an attempt to evict the plaintiff, and is not the real reason. There are tenants that leave garbage unattended for days at a time without apparently receiving evictions. This notice is based on visits to the plaintiff's apartment by African Americans.

Complaint, ¶ 13. As to the second occasion on which Newell received a notice concerning garbage, Newell explains,

The sacks which are questioned in the [second] notice were not placed outside by the plaintiff. The plaintiff has a difficult [time] handling the garbage due to either caring for her child in her apartment, or having to carry her child with her. She has enlisted the assistance of friends to handle the garbage. On the occasion mentioned in the [second] Notice ... a friend may have, unbeknownst to the plaintiff, disposed of the garbage inappropriately. Such is not a material noncompliance with the landlord-tenant agreement.

Complaint, ¶ 14. Newell alleges that, if she is evicted, she will have no place to live and will be unable to receive "Section 8" housing assistance for at least one year. Complaint, ¶¶ 18–19.

In an affidavit in support of her motion for injunctive relief, Newell essentially repeats the allegations in her Complaint. However, she also attached to her affidavit the latter of the two notices from Rolling Hills that she contends were motivated by racial animus. The second notice is denominated a "7 Day Notice of Recurring Noncompliance," and is dated February 20, 2001. *See* Affidavit In Support Of Motion For Temporary Restraining Order And/Or Preliminary Injunction (Newell Affidavit), Unnumbered Exhibit 1. This notice asserts that Newell has failed, for the second time, to dispose of trash "in a manner consistent [sic] with our community policies," and states, "This is notice that your *tenancy terminates* 7 days from now on the date of 2–27–01." *Id.* (emphasis in the original). The notice further warns, "If you have not vacated and/or have not returned the keys, we will consider that you are still in possession, and we will proceed with the EVICTION process by serving a '3 Day Notice to Quit.'" *Id.* The notice is signed by Tony Jacobsen, Property Manager, Rolling Hills Apartments.

The record does not include any "3 Day Notice to Quit." However, Newell also attached to her affidavit an Original Notice she received of a forcible entry and detainer action in Iowa District Court for Webster County. *See id.*, Unnumbered Exhibit 2. This Original Notice, with an

unreadable file stamp, bears another stamp indicating "RULE COPY HEREOF MAILED OR DELIVERED TO *2 Sheriff deft* ON *3–1–01*,"[2] with the initials of a deputy in the Office of the Clerk of the District Court of Webster County, Iowa. *Id.* (underlining indicating handwritten text). The Original Notice informed Newell that possession of her apartment is demanded on the basis of "repeated violation of community policies and the lease." *Id.* It also notified Newell that, unless she appeared for a hearing in state court at 9:45 a.m. on March 8, 2001, judgment would be rendered against her for possession of her apartment at Rolling Hills and for court costs. *Id.*

### B. Procedural Background

Newell, through counsel, initiated the present federal action by filing an Application For Leave To Proceed In Forma Pauperis and a supporting affidavit, which were mailed to the court on March 7, 2001, and received and filed by the Clerk of Court on March 9, 2001. The court granted Newell leave to proceed *in forma pauperis,* and Newell's Complaint, Motion For Temporary Restraining Order And Preliminary Injunction, and affidavit in support of the motion for injunctive relief were all filed March 9, 2001. The Complaint, generally, seeks injunctive relief pending eviction, and legal relief for discrimination pursuant to the Fair Housing Act and 42 U.S.C. § 1983 for violation of Newell's civil rights guaranteed by the United States Constitution. Complaint, ¶ 1. The defendants in this action are identified as Rolling Hills, an apartment complex in Fort Dodge, Iowa, and ACN–Fort Dodge Partners, L.P., and ACN–Fort Dodge Partners II, L.P., one or both of which are alleged to be the owners of Rolling Hills apartments (collectively, "Rolling Hills"). *Id.* at ¶ 6.

The principal factual allegations of the Complaint were outlined above. These allegations, Newell contends, give rise to the following causes of action. First, in Count I, Newell alleges that Rolling Hills "discriminated against the plaintiff in the terms, conditions and privileges in the rental of her dwelling based on the race and/or color of her child and acquaintances," causing her to suffer and continue to suffer irreparable injury and monetary damages. Complaint, ¶¶ 21–22. This count seeks injunctive relief enjoining Rolling Hills from evicting Newell. Count II alleges that Rolling Hills acted under color of state law when it sent Newell the Notice of Recurring Noncompliance, that Rolling Hills violated and is continuing to violate Newell's constitutional right of association with her friends and her child by denying her the right to choose whom she sees at her dwelling unit, and alleges that Rolling Hills' conduct has caused Newell to suffer and to continue to suffer irreparable injury and monetary damages "in violation of 42 U.S.C. §§ 1981 and 1983." *Id.* at ¶¶ 25–27. This count also prays that Rolling Hills be enjoined from evicting Newell. *Id.* at ¶ 28. In a separate Prayer for Relief, the Complaint specifically prays that the court do the following: declare that the acts and practices of Rolling Hills alleged in the Complaint are in violation of the Fair Housing Act, 42 U.S.C. § 3604; declare that the acts and practices of Rolling Hills alleged in the Complaint are in violation of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983; enjoin Rolling Hills from evicting Newell; enjoin and permanently restrain Rolling Hills "from precluding access to anyone with whom plaintiff chooses to associate"; award compensatory and punitive damages, costs of the action, and reasonable

---

2. The handwritten date originally indicated in this stamp appears to be 3–2–01, but the 2 has been written over with what appears to be a 1. *Id.*

attorneys fees; and grant such other relief as is appropriate. *Id.* at Prayer For Relief, ¶¶ 1–7. Newell also demands a jury trial in this action. *Id.* at Demand For Jury Trial.

On March 8, 2001, Newell's counsel e-mailed the court a courtesy copy of a brief in support of Newell's motion for temporary restraining order and preliminary injunction. However, apparently owing to failures in the e-mail system, that e-mail was not received until March 10, 2001, and the attached brief could not be opened or printed. Newell's counsel was notified of this problem by e-mail on March 11, 2001, and the court received both a fax copy and a filed "hard" copy of the brief on March 12, 2001.

The court's preliminary research over the weekend indicated that there could be significant jurisdictional impediments that would bar the court from entertaining Newell's action for injunctive relief. Therefore, on March 12, 2001, the court entered an order directing the parties to submit briefs by noon on March 13, 2001, concerning the applicability of issue preclusion and the *Rooker–Feldman* doctrine [3] to the present action. Also on March 12, 2001, by separate order, the court set a telephonic hearing on Newell's motion for a temporary restraining order or preliminary injunction for 3:00 p.m. on March 13, 2001.[4]

As directed, on March 13, 2001, Newell's counsel faxed the court a copy of her Supplementary Brief In Support Of Temporary Restraining Order addressing the jurisdictional issues raised by the court in its order for supplemental briefing. In that brief, Newell explained that, on March 8, 2001, the state magistrate hearing the forcible entry and detainer action by Rolling Hills against Newell had "deferred entry of any judgment to determine whether a Temporary Restraining Order would be issued by this [federal] Court." Plaintiff's Supplementary Brief In Support Of Temporary Restraining Order (Plaintiff's Supplementary Brief) at 2.

Prior to the scheduled hearing in these proceedings on March 13, 2001, the court entered another order directing the parties to be prepared to discuss at the hearing the applicability of two recent decisions, *Jacobs v. Gear Properties,* 242 F.3d 375, 2001 WL 87440 (8th Cir. Feb.2, 2001) (table op.), and *Long v. Shorebank Development Corp.,* 182 F.3d 548 (7th Cir.1999), copies of which were attached to the order. These decisions appeared to the court to examine the applicability of issue preclusion and the *Rooker–Feldman* doctrine in circumstances comparable to those presented here.

A non-lawyer employee representative of Rolling Hills notified the court by telephone prior to the time scheduled for the hearing that she had not yet been able to secure counsel to represent the defendants at the TRO/preliminary injunction hearing. Therefore, the court reset the telephonic hearing on Newell's motion for a temporary restraining order or preliminary injunction for 1:00 p.m. on March 14, 2001. Rolling Hills notified the court on the morning of March 14, 2001, that it had secured counsel for the hearing.

---

**3.** *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**4.** These orders were immediately sent to plaintiff's counsel by facsimile transmission and included directions to plaintiff's counsel to serve copies of the orders on defendants' counsel or, if the identity of defendants' counsel was not known to the plaintiff, on defendants prior to the hearing.

At the telephonic hearing on March 14, 2001, plaintiff Shannon Newell was represented by Blake Parker of the Blake Parker Law Office in Fort Dodge, Iowa. Defendants Rolling Hills Apartments, ACN–Fort Dodge Partners, L.P., and ACN–Fort Dodge Partners II, L.P. (collectively, "Rolling Hills") were represented by Mark Thomas of Grefe & Sidney in Des Moines, Iowa. At the hearing, the court suggested to the parties that the deferral of the judgment in the state court eviction proceedings raised, in addition to or instead of the *Rooker–Feldman* and issue preclusion questions previously noted, a further question of the court's obligation to abstain from consideration of injunctive relief pursuant to the *Younger* abstention doctrine.[5] Newell's counsel requested leave to submit to the court by the end of the day any additional argument or authority he could find to support an argument that the present action is excepted from application of the *Younger* abstention doctrine. No additional authorities or argument were submitted, however.

## II. LEGAL ANALYSIS

Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of temporary restraining orders and preliminary injunctions. FED. R. CIV. P. 65. In a recent decision, *Branstad v. Glickman,* 118 F.Supp.2d 925 (N.D.Iowa 2000), this court considered the differences between a temporary restraining order and a preliminary injunction. *See Branstad,* 118 F.Supp.2d at 935–37. In *Branstad,* this court also discussed in some detail the well-settled standards in this circuit for determining whether or not a preliminary injunction or temporary restraining order should issue, the standards set forth in the decision of the Eighth Circuit Court of Appeals in

*Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (*en banc* ), and its progeny. *See Branstad,* 118 F.Supp.2d at 937; *Uncle B's Bakery, Inc. v. O'Rourke,* 920 F.Supp. 1405, 1411 (N.D.Iowa 1996). These factors include the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase,* 640 F.2d at 114; *accord Branstad,* 118 F.Supp.2d at 937 (quoting similar factors from *Entergy, Ark., Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir.2000)); FED. R. CIV. P. 65(b)(1).

However, as this court also noted in *Branstad,*

> [T]he Eighth Circuit Court of Appeals recently reiterated, "It is axiomatic that the federal courts lack plenary jurisdiction." *Southwestern Bell Tel. Co. v. Connect Communication Corp.,* 225 F.3d 942, 945 (8th Cir.2000) (citing *Godfrey v. Pulitzer Publ'g Co.,* 161 F.3d 1137, 1141 (8th Cir.1998)). Rather, "[t]he inferior federal courts may only exercise jurisdiction where Congress sees fit to allow it." *Id.* Therefore, courts must resolve challenges to subject matter jurisdiction first. *United States v. Negele,* 222 F.3d 443, 446 (8th Cir.2000) (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

*Branstad,* 118 F.Supp.2d at 932. Moreover, because "[f]ederal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Marine Equip. Management Co. v. United*

---

**5.** *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see also Middlesex County Ethics Comm. v. Garden State Bar* *Ass'n,* 457 U.S. 423, 435–37, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

*States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), in turn citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1171 (8th Cir.1994) (federal court jurisdiction is limited by Article III of the Constitution), a federal court has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra* ); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir. 1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). Similarly, "[t]he parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 105 L.Ed.2d 1(1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent," citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18 & n. 17, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 33

U.S. (8 Pet.) 148, 149, 8 L.Ed. 898 (1834)), *overruled on other grounds, Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Thus, even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)).

Therefore, before considering the merits of Newell's motion for preliminary injunctive relief under the *Dataphase* standards, the court finds that it must address questions about its jurisdiction to hear the motion. Notwithstanding that the court must be satisfied of its subject matter jurisdiction, "[t]he Supreme Court recently affirmed that federal courts " 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given,' " and that " '[t]he one or the other would be treason to the Constitution.' " " *Night Clubs, Inc. v. City of Fort Smith, Ark.,* 163 F.3d 475, 478 (8th Cir. 1998) (quoting *New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), in turn quoting *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821)). Thus, the court's scrutiny of its jurisdiction is not undertaken lightly or on a whim. The jurisdictional questions this court finds it must confront involve the applicability of the *Younger* abstention doctrine and the *Rooker–Feldman* doctrine.

### A. Jurisdictional Doctrines

The record available to the court until shortly before the temporary restraining

order/preliminary injunction hearing was originally scheduled indicated that a hearing on Rolling Hills' state court action for forcible entry and detainer had been scheduled for March 8, 2001. Consequently, the court assumed that a ruling unfavorable to Newell had been filed in that state court action prior to Newell's March 9, 2001, request that this court enjoin her eviction. In the circumstances as the court understood them, the court initially believed that the applicable jurisdictional issue was whether or not the *Rooker–Feldman* doctrine barred this court's subject matter jurisdiction. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Eighth Circuit Court of Appeals recently explained the *Rooker–Feldman* doctrine, as follows:

> The *Rooker–Feldman* doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. See 28 U.S.C. § 1257; *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303. Because the *Rooker–Feldman* rule is jurisdictional, it may be addressed for the first time on appeal and may be raised sua sponte. *See Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 137 (2d Cir.1997). We review questions of subject matter jurisdiction de novo. *See Charchenko v. City of Stillwater,* 47 F.3d 981, 982–83 (8th Cir. 1995).

> The *Rooker–Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. *See Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303; *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1034 (8th Cir. 1999); *Neal v. Wilson,* 112 F.3d 351, 356 (8th Cir.1997). A general federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). In such cases, "where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* The state and federal claims need not be identical. *See In re Goetzman,* 91 F.3d 1173, 1177 (8th Cir.1996).

*Lemonds v. St. Louis County,* 222 F.3d 488, 492–93 (8th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1168, 148 L.Ed.2d 1026 (2001). In her Supplementary Brief, however, Newell contended that this doctrine is simply inapplicable, because the state court had not entered a judgment in the forcible entry and detainer action against her, but had instead "deferred entry of any judgment to determine whether a Temporary Restraining Order would be issued by this [federal] Court." Plaintiff's Supplementary Brief at 2. This was the first indication this court had that the state court eviction proceedings had not come to judgment.

■ Assuming, without deciding, that the *Rooker–Feldman* doctrine is inapplicable where state proceedings have not yet reached a judgment, Newell's argument does not relieve the court of jurisdictional concerns. Rather, the fact that state court proceedings, which were initiated first, are still on-going raises the question of the applicability of the *Younger* abstention doctrine. As the Eighth Circuit Court of Appeals has explained,

> In *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. Under *Younger*, abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges. *See Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir.1996).

*Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 325 (8th Cir.1999), *cert. denied*, 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000). The applicability of this doctrine here requires more detailed consideration.

### B. Younger Abstention

#### 1. The doctrine and the rationale

In *Yamaha Motor Corporation v. Stroud*, 179 F.3d 598 (8th Cir.1999), the Eighth Circuit Court of Appeals explained the *Younger* abstention doctrine in somewhat more detail:

> In *Younger*, the Supreme Court articulated the *strong policy considerations* that counsel against the exercise of jurisdiction in the face of ongoing state proceedings:
>
> > [T]he concept [of federalism] represent[s] . . . a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.
>
> *Younger*, 401 U.S. at 44, 91 S.Ct. 746. *Younger* itself involved federal abstention from a request to enjoin a state criminal proceeding, *see id.* at 53, 91 S.Ct. 746, but similar policy concerns apply when there is a pending state administrative proceeding. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431–32, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

*Stroud*, 179 F.3d at 602; *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir.1998) ("In *Younger*, the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings except in very unusual situations. The *Younger* doctrine has since been expanded to prohibit federal courts from interfering in certain pending state civil cases, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–07, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), as well as pending state administrative proceedings which are judicial (as opposed to legislative) in nature, *see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex·County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)."). One reason for abstaining is that "[c]omity favors permitting the [state] court system to decide issues of state statutory law, and abstention is called for when it is possible that the state court might interpret the

underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims." *Id.* at 603, 95 S.Ct. 1200 (citing *Ronwin v. Dunham,* 818 F.2d 675 (8th Cir.1987)); *see also Night Clubs, Inc.,* 163 F.3d at 477 n. 1 ("The *Younger* abstention doctrine ... directs federal courts to abstain from accepting jurisdiction in cases where equitable relief is requested and where granting such relief would interfere with pending state proceedings in such a way as to offend principles of comity and federalism."). "This rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions." *Id.* (citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). A federal court's decision to abstain pursuant to *Younger* is reviewed for abuse of discretion. *See Stroud,* 179 F.3d at 602; *Night Clubs, Inc.,* 163 F.3d at 479.

### 2. Requirements for abstention

■ As the Eighth Circuit Court of Appeals explained in *Stroud,*

> Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of "bad faith, harassment, or other exceptional circumstances." *Middlesex,* 457 U.S. at 432, 437, 102 S.Ct. 2515.

*Stroud,* 179 F.3d at 602; *see also Harmon,* 197 F.3d at 325 (identifying similar requirements); *Night Clubs, Inc.,* 163 F.3d at 479 ("There are essentially three issues that must be addressed in determining whether to invoke the *Younger* abstention doctrine: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. *See Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515. If all three questions are answered affirmatively, a federal court should abstain unless it detects 'bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate.' *Id.* at 435, 102 S.Ct. 2515.").

### a. Ongoing state judicial proceedings

The first requirement for application of the doctrine is that there be an "on-going" state judicial proceeding. *See Stroud,* 179 F.3d at 602; *Night Clubs, Inc.,* 163 F.3d at 479 & 480 ("In addition to being judicial in nature, *Younger* requires that the state proceeding must be ongoing at the time the district court enters its order regarding abstention."). A federal suit cannot interfere with a state court proceeding if the state proceeding has ceased. *Harmon,* 197 F.3d at 326. In the present case, there is no question that state forcible entry and detainer actions before Iowa District Courts, such as the one brought by Rolling Hills against Newell, are "judicial." *See* IOWA CODE § 648.5 (providing that "[t]he court within the county shall have jurisdiction of actions for the forcible entry or detention of real property"). Moreover, the parties did not dispute at the hearing before this court that the state forcible entry and detainer action is "ongoing." More specifically, the parties advised the court at the hearing that the forcible entry and detainer action has been scheduled for further hearing at 10:45 a.m. on Thursday, March 15, 2001. Newell's counsel explained that the first "hearing" in the forcible entry and detainer action, on March 8, 2001, involved little more than a conference with the state magistrate concerning the existence and status of the present federal action and that the state magistrate heard no evidence and rendered no judgment, but instead "deferred" not only the judgment, but "deferred" any

hearing on the forcible entry and detainer action in its entirety until this court rules on Newell's motion for a temporary restraining order or preliminary injunction. Thus, the state forcible entry and detainer action is "ongoing." To put it another way, even though the state proceedings have been "deferred," they have not "ceased," *see Harmon,* 197 F.3d at 326, because the parties clearly anticipate the resumption of those proceedings after this court rules on Newell's motion for a temporary restraining order or preliminary injunction. Thus, the first requirement for abstention is satisfied here.

### b. Important state interests

The second requirement is that the state and federal proceedings must implicate "important state interests." *Stroud,* 179 F.3d at 602; *Night Clubs, Inc.,* 163 F.3d at 479. Although one federal district court recently concluded that "an ejectment action" was merely "a landlord-tenant action that is routinely available in disputes between private parties," and thus did not involve any "important state interest," *see Brooklyn Inst. of Arts & Sciences v. City of New York,* 64 F.Supp.2d 184, 194 (E.D.N.Y.1999), this court does not agree. Rather, eviction is a relatively complex procedure extensively regulated by state law, which dictates stringent notice requirements and the nature of the eviction proceedings themselves. *Cf. Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (abstention is appropriate when state attachment procedures have been initiated); *see also* IOWA CODE CH. 562 (owner-tenant law); IOWA CODE CH. 562A (uniform landlord-tenant act); IOWA CODE CH. 648 (procedures for forcible entry and detainer). Moreover, where the state has so extensively regulated the relationship between private parties, as it has in landlord-tenant law, the state has the further interest in determining, in the first

instance, what defenses may appropriately be raised to a forcible entry and detainer action. *See* IOWA CODE § 562A.27(4) (specifying certain permissible defenses in an action for possession based on nonpayment of rent); *cf.* IOWA CODE § 648.19 (providing that, with certain exceptions, no other claim or counterclaim may be joined with a forcible entry and detainer action). Thus, the court is satisfied that the present action implicates important state interests, such that abstention may be appropriate.

### c. Adequate opportunity to raise constitutional challenges

The third requirement for application of the *Younger* abstention doctrine is that there must be an adequate opportunity in the state proceedings to raise constitutional challenges. *See Stroud,* 179 F.3d at 602; *Night Clubs, Inc.,* 163 F.3d at 479. Thus, the question is whether the plaintiff in the federal action "could have raised" or "in fact did raise" his or her federal constitutional claims before the state court. *Night Clubs, Inc.,* 163 F.3d at 480. Here, there is no indication that Newell will be prevented from raising her race discrimination claim (whether statutory or constitutional) in the forcible entry and detainer action, where there is no indication in the record that the state court has ruled that Newell *cannot* assert a race discrimination defense in the forcible entry and detainer action.

Newell contended, however, in argument concerning a similar requirement under the *Rooker–Feldman* doctrine, that she is precluded by IOWA CODE § 648.19 from asserting her constitutional claims as counterclaims or affirmative defenses in a forcible entry and detainer action. Newell is correct that she cannot obtain the *recovery* she seeks on her federal claims in the forcible entry and detainer action. *See*

*Palmer v. Tandem Mgmt. Servs., Inc.,* 505 N.W.2d 813, 815 (Iowa 1993) (noting that Iowa Code § 648.19 prohibits counterclaims in forcible entry and detainer actions, except for statutory rights under the residential landlord-tenant chapter, Iowa Code § 562A, and the mobile home parks residential landlord-tenant chapter, Iowa Code § 562B, noting that these exceptions include a defenses premised on the landlord's noncompliance with the rental agreement in an action for possession and the landlord's willful diminishment of services); *Khan v. Heritage Property Mgmt.,* 584 N.W.2d 725, (Iowa Ct.App.1998) ("Originally, forcible entry and detainer actions could not be brought with any other action except for the collection of rent, nor could [they] be made the subject of a counterclaim.... The legislature, however, later listed some limited exceptions to this general prohibition in section 648.19 to enable some landlord/tenant disputes involving the same subject matter to be settled at one time. Significantly, however, the general prohibition against other actions in section 648.19 unrelated to the forcible entry and detainer case and the recovery of rent was left unaffected.") (citations omitted). The purpose of these restrictions is to provide a speedy remedy in possession of real property actions free of the diverting and time-consuming litigation of unrelated lawsuits. *Palmer,* 505 N.W.2d at 815; *Khan,* 584 N.W.2d at 728. However, the court concludes that, although somewhat vague on the question, Iowa law does permit Newell to raise race discrimination as a *defense* to the forcible entry and detainer action.

***i. Iowa law.*** In *Rokusek v. Jensen,* 548 N.W.2d 570, 573 (Iowa 1996), the Iowa Supreme Court noted that, although forcible entry and detainer actions are "summary in nature, such proceedings afford tenants a forum to tender" certain defenses, including nonstatutory defenses asserted by the tenant in that case, which were premised on compliance with applicable health and safety regulations. *Rokusek,* 548 N.W.2d at 573.[6] In *Palmer v. Tandem Management Services, Inc.,* 505 N.W.2d 813 (Iowa 1993), the Iowa Supreme Court concluded that "the legislature intended a linkage between sections 648.19 [forcible entry and detainer actions] and chapters 562A [residential landlord-tenant law] and 562B [mobile home park landlord-tenant law] so that the statutory law is compatible," thus permitting incorporation of defenses from the chapters concerning landlord-tenant law generally into the scheme for forcible entry and detainer actions. *Palmer,* 505 N.W.2d at 815. Similarly, in *Hillview Associates v. Bloomquist,* 440 N.W.2d 867 (Iowa 1989), the Iowa Supreme Court recognized that Iowa Code chapters 562A and 562B "[b]oth prohibit retaliatory conduct." *Hillview Assocs.,* 440 N.W.2d at 871 (citing IOWA CODE §§ 562A.36 and 562B.32). In *Hillview Associates,* the court concluded that, "[i]n deciding whether a tenant has established a defense of retaliatory eviction, we consider the following factors, among others, tending to show the landlord's primary motivation was not retaliatory: ... (g) The landlord's action was not discriminatory." *Id.* (citing *Restatement (Second) of Property* § 14.8 comment f (1977)). Al-

---

**6.** In *Rokusek,* the Iowa Supreme Court also concluded that the tenant "need not have waited to assert her available defenses [in the forcible entry and detainer action] but could have moved proactively" by seeking to "establish her rights under the parties' agreement pursuant to an action for declaratory judg-

ment." *Rokusek,* 548 N.W.2d at 573. Similarly, in the present situation, Newell could have brought a declaratory judgment action to seek a declaration that she could not be evicted on grounds that would violate the state or federal constitutions or fair housing laws.

though neither the *Restatement* section or comment cited, nor the Iowa Supreme Court in *Hillview Associates* further explained in what sense "discriminatory" was meant, it seems reasonable to assume that it was meant in a constitutional or "equal protection" sense, encompassing race discrimination. Thus, the court concludes that the door is open under Iowa law to consideration of whether or not a landlord's eviction action is "discriminatory" as an affirmative defense to a forcible entry and detainer action.

*ii. Other states.* It appears that the majority of states to consider the question recognize that the landlord's discriminatory conduct, that is, discriminatory conduct towards a tenant on the basis of a protected characteristic, such as race, color, or disability, is a cognizable defense in a forcible entry and detainer action. *See Capone v. Kenny*, 646 So.2d 510, 512 (La.Ct. App.1994) (concluding that a defense of discrimination as an "abuse of right" defense was "germane" to an eviction proceeding, and thus could be asserted as a defense in a summary eviction proceeding); *Mascaro v. Hudson*, 496 So.2d 428 (La.Ct.App.1986) (concluding that discrimination in violation of the Fair Housing Act, which prohibits discrimination on the basis of race, color, religion, sex, or national origin, was a defense within the scope of the recognized defense of "abuse of right" in an eviction action concerning a rental dwelling); *City Wide Assocs. v. Penfield*, 409 Mass. 140, 564 N.E.2d 1003, 1004 (1991) (permitting the tenant to assert an affirmative defense of discrimination on the basis of handicap in violation of the Rehabilitation Act in an eviction proceeding); *Western Land Office, Inc. v. Cervantes*, 175 Cal.App.3d 724, 734, 220 Cal. Rptr. 784, 791 (1985) (noting that California law recognized that an assertion that racial discrimination was the motivation for an eviction could be raised as a defense to an eviction action); *Ellis v. Minneapolis*

*Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982) (a tenant had a "full and fair" opportunity to litigate the issue of alleged discriminatory eviction based on race in an "unlawful detainer action"); *see also Ansonia Acquisition I., L.L.C. v. Francis*, 26 Conn. L. Rptr. 363 (Conn.Super.1999) (concluding, as a matter of first impression, that a claim of racial discrimination may be asserted as a "special defense" to an eviction action, even though it would afford much more limited relief than an independent action for race discrimination in housing). Where such a defense is rejected, it has been on the basis that the eviction proceedings are intended to be "summary" in nature, but in most such cases, the courts also recognized that the tenant still had the right to litigate a discrimination claim in the proper state forum and obtain complete relief. *See Housing Auth. of Everett v. Terry*, 114 Wash.2d 558, 789 P.2d 745 (1990) (precluding a handicap discrimination claim as a defense in an unlawful detainer action); *Lake in the Woods Apartment v. Carson*, 651 S.W.2d 556, 558 (Mo.Ct.App.1983) (rejecting the defense in eviction actions on the ground that other avenues to obtain relief were available); *see also Eagle Property Mgmt. v. Small*, 546 N.W.2d 578, 1996 WL 26725 (Wis.App.1996) (table op.) (rejecting the tenant's argument that failure to allow discrimination as an eviction defense defeats the public interest in antidiscrimination laws on the ground that relief from discrimination in housing can be obtained in a separate discrimination seeking injunctive relief). Thus, reading Iowa law to permit assertion of an affirmative defense of racially discriminatory eviction in a forcible entry and detainer action would be in accord with the law of the majority of sister states to consider the question as well as constitute a reasonable reading of Iowa law.

#### d. "Exceptional circumstances"

■ Nor can the court find "exceptional circumstances" counseling against *Younger* abstention. "[E]xceptional circumstances making abstention inappropriate" include, for example, situations in which the state tribunal is "incompetent, biased, or otherwise incapable of fairly interpreting the [state] statute in question." *Stroud*, 179 F.3d at 603. There is no evidence of such incompetence or bias here. Moreover, abstention is appropriate, for example, "when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims." *Stroud*, 179 F.3d at 603 (citing *Ronwin*, 818 F.2d at 675). As noted above, "This rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions." *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). Abstaining in the instant action will permit the state court to determine, in the first instance, whether race discrimination by the landlord can be raised as an affirmative defense in a state forcible entry and detainer action, which would "foreclose the need to review at least [the equitable relief portions] of the plaintiff's federal claims" in this federal action. *Id.*

#### 3. Other federal precedent

This court's conclusion that abstention is appropriate is also in accord with federal decisions considering whether or not the court should abstain, under the *Younger* doctrine, from considering actions to enjoin state eviction proceedings on the basis of alleged discrimination or other conduct by the landlord in violation of federal law. *See Wood v. City of Hayward*, 974 F.2d 1344, 1992 WL 209550 (9th Cir.1992) (table op.) (the district court properly held that *Younger* abstention was appropriate where the plaintiff/tenant brought a claim pursu-ant to 42 U.S.C. § 1983 in which he claimed that he was being evicted from an airport hanger rented from the city in retaliation for exercising First Amendment rights); *Residents of the New Ritz Hotel v. City of Chicago*, 2001 WL 58958 (N.D.Ill. Jan.22, 2001) (finding that the requirements for *Younger* abstention were met, and the tenant's claim that the state court's were not "minority friendly," without supporting facts, failed to establish an exception); *Miller v. Silberman*, 951 F.Supp. 485 (S.D.N.Y.1997) (*Younger* abstention was warranted in an action by landlords and landlord associations asserting federal civil rights violations against the judges and clerks of the New York City Housing Court); *but see Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F.Supp.2d 184 (E.D.N.Y.1999) (finding a "bad faith" exception to *Younger* abstention, even if the City could establish the other requirements for abstention, which the court doubted, although the case did not involve any "discrimination" claims); *Musko v. McClandless*, 1995 WL 262520 (E.D.Pa.1995) (unpublished) (the "bad faith" exception to *Younger* abstention permitted a federal suit alleging First Amendment violations and violations of the Americans with Disabilities Act in land-use actions to go forward); *McNeill v. New York City Housing Auth.*, 719 F.Supp. 233 (S.D.N.Y.1989) (concluding that *Younger* abstention was not appropriate in an action by low income tenants seeking to enjoin evictions on the ground that the state court eviction actions did not allow the tenants to assert the landlords' violation of "section 8" housing rules).

#### 4. Summary

The court concludes that *Younger* abstention is appropriate in this case, at least until and unless the plaintiff demonstrates that she has been prevented from asserting race discrimination as a defense in the

ongoing eviction action in state court, thereby establishing that the third requirement for *Younger* abstention is lacking. This does not, however, require dismissal of the present action, or even dismissal of the equitable relief portions of Newell's claims. Although "*Younger* abstention means that courts should not grant declaratory [or injunctive] relief that would interfere with pending judicial proceedings ..., [c]laims for damages are different ..., and a federal court may not decline to exercise jurisdiction over them, unless the damages sought would require a declaration that a state statute is unconstitutional." *Stroud,* 179 F.3d at 603 (internal citations omitted) (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)); *Night Clubs, Inc.,* 163 F.3d at 477 n. 1 (the *Younger* abstention doctrine applies to federal actions for equitable relief). Thus, "[w]hen monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed. As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining." *Id.* at 603–04. Because these are the circumstances that obtain here, only a stay is appropriate in this case on Newell's claims for money damages, because there is no demonstration that, in order to grant relief, the court would have to declare any state statute to be unconstitutional. Moreover, the court will only stay Newell's claims for equitable relief, because it is possible that she will be able to demonstrate that she was actually foreclosed from asserting race discrimination as a defense to the eviction action.

### C. Rooker–Feldman Doctrine

Moreover, as a further prudential consideration in the court's determination of whether or not to exercise jurisdiction over the present action at this time, the court concludes that it is almost inevitable that the present action will run afoul of the *Rooker–Feldman* doctrine, if the state court proceeding runs to judgment. In *Jacobs v. Gear Properties,* 242 F.3d 375, 2001 WL 87440 (8th Cir. Feb.2, 2001) (table op.), an unpublished, *per curiam* opinion, the Eighth Circuit Court of Appeals invoked the doctrine in similar circumstances. The decision in *Jacobs,* in its entirety, reads as follows:

> Leland W. Jacobs appeals the District Court's dismissal of his civil rights action, in which he claimed that defendants evicted him from his apartment for a discriminatory or retaliatory reason. Plaintiff's eviction occurred after defendants prevailed in their state court unlawful detainer action against him. After de novo review, *see Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir.2000), we conclude the District Court properly dismissed plaintiff's action, as it lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine. *See Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995) (*Rooker–Feldman* precludes federal claims if relief requested would effectively reverse state court decision or void its ruling).
>
> Accordingly, we affirm. *See* 8th Cir. R. 47B.

*Jacobs,* 2001 WL 87440 at *1 (footnotes omitted). Read broadly, this decision would dictate dismissal of the present action for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, if the state eviction proceeding came to judgment. *See United States v. Goldman,* 228 F.3d 942, 944 (8th Cir.2000) (courts must follow unpublished precedent of the controlling Circuit Court of Appeals), *cert. denied,* —— U.S. ——, 121 S.Ct. 1149, 148 L.Ed.2d 1011 (2001); *Anastasoff v. United States,* 223 F.3d 898, 905 (8th Cir.2000)

(that portion of 8th Cir.R. 28A(i) that states unpublished opinions are not precedent is unconstitutional under Article III), *vacated on reh'g en banc on other grounds,* 235 F.3d 1054 (2000) (*en banc*) (noting that, because the panel decision had been vacated as moot, "[t]he constitutionality of that portion of Rule 28A(i) which says that unpublished opinions have no precedential effect remains an open question in this Circuit").

Moreover, a more thorough (and published) decision of the Seventh Circuit Court of Appeals, *Long v. Shorebank Dev. Corp.,* 182 F.3d 548 (7th Cir.1999), also suggests the inevitability of a *Rooker–Feldman* problem with jurisdiction in this case, if the state court proceedings run to judgment. In *Long,* the court concluded that the tenant's claim that the landlords deprived her of her property without due process stemmed directly from the state court's eviction order entered against her. *Long,* 182 F.3d at 557. The court explained,

> In other words, while Long complains that the defendants deprived her of her property without due process in initiating and pursuing the eviction action, the injuries she alleges were complete only when the Circuit Court entered the eviction order against her. Absent the eviction order, Long would not have suffered the injuries for which she now seeks to be compensated. And, to prevail on her claims, she would inevitably be forced to challenge the validity of this order. As we explained in *Ritter,* a litigant may not attempt to circumvent the effect of Rooker–Feldman and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action. *See Ritter [v. Ross],* 992 F.2d [750,] 754 [ (7th Cir. 1993) ].

*Long,* 182 F.3d at 557. Similarly, in this case, while Newell alleges that she was singled out on the basis of race for the citations for rules violations, the injuries she alleges will only be complete when (and if) the state court enters an eviction order against her. Moreover, to prevail on her claims, Newell would inevitably be forced to challenge the validity of the eviction order. Like the plaintiff in *Long,* Newell may not attempt to circumvent the effect of *Rooker–Feldman* and seek a reversal of a state court eviction judgment simply by casting her complaint in the form of a civil rights action. *Id.*

In *Long,* however, the court also concluded that, unless the state court proceedings provide a "reasonable opportunity" to raise a civil rights claim, the *Rooker–Feldman* doctrine would not require dismissal of a federal action to enjoin state court eviction proceedings on the basis of alleged civil rights violations, because in such circumstances, the civil rights claim was not "inextricably intertwined" with the state court judgment. *See id.* at 557–58. Here, there is as yet no showing that Newell has been deprived of a "reasonable opportunity" to raise her race discrimination claims as a defense to eviction, so that it now appears that her discrimination claims *are* inextricably intertwined with the eviction issue. However, as with application of the *Younger* abstention doctrine, it appears that any *Rooker–Feldman* bar on jurisdiction would evaporate if Newell is in fact barred from asserting her race discrimination defense in the eviction proceedings.

### III. CONCLUSION

The court finds that the *Younger* abstention doctrine is applicable to the plaintiff's motion for a temporary restraining order or preliminary injunction. However, it is possible that, in the course of the state court eviction proceedings, she will be barred from asserting race discrimination as a defense, thus making the *Younger* doctrine inapplicable. Moreover, Newell

has asserted claims for monetary relief in addition to injunctive or equitable relief. In these circumstances, the appropriate course is for the court to stay the present action until completion of the state court proceedings.

Therefore, the plaintiff's motion for a temporary restraining order or preliminary injunction is **denied without prejudice** and this action is **stayed** pursuant to the *Younger* abstention doctrine.

IT IS SO ORDERED.