# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3727

_____

Cedar Rapids Cellular Telephone, L.P.;    *
Davenport Cellular Telephone    *
Company,    *
   *
       Plaintiffs/Appellants,    *
   *
WWC License, LLC;    *
Iowa Wireless Services, L.P.,    *
   *
       Plaintiffs,    *
   *
     v.    *
   *
Thomas Miller, Sued as Thomas J.    *
Miller, individually, in his official    *
capacity as Attorney General of Iowa    *
and Administrator of the Iowa    *
Consumer Credit Code,    *
   *
       Defendant/Appellee.    *
   *

_____

No. 00-3728

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

Cedar Rapids Cellular Telephone, L.P.;    *
Davenport Cellular Telephone    *
Company,    *
   *
       Plaintiffs,    *

|  |  |
|---|---|
| WWC License, LLC, | * |
|  | * |
| Plaintiff/Appellant, | * |
|  | * |
| Iowa Wireless Services, L.P., | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * |
| Thomas Miller, Sued as Thomas J. Miller, individually, in his official capacity as Attorney General of Iowa and Administrator of the Iowa Consumer Credit Code, | * |
|  | * |
| Defendant/Appellee. | * |

_____

Submitted: November 14, 2001

Filed: February 14, 2002
_____

Before BYE, RICHARD S. ARNOLD, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

Cedar Rapids Cellular Telephone, L.P. (Cedar Rapids Cellular), Davenport Cellular Telephone Company (Davenport Cellular), and WWC License, LLC (WWC), appeal the district court's dismissal of their complaint, which seeks to enjoin

the Attorney General of Iowa from enforcing state consumer protection statutes against them. We affirm in part, reverse in part, and vacate the judgment of dismissal.

## I.    BACKGROUND

Cedar Rapids Cellular, Davenport Cellular, and WWC all provide wireless telephone service in the State of Iowa. One way they sell wireless service is through "term service agreements" in which customers agree to purchase cellular telephone service for pre-established periods of time, typically from twelve to twenty-four months. Under the term service agreements, a customer who cancels service before the expiration of the term must pay liquidated damages in the form of a cancellation fee. Cancellation fees allegedly range from $300 to over $500.

In January 1998, the Attorney General of the State of Iowa notified several wireless service providers that their business practices violate Iowa law. The companies contacted by the Attorney General included appellant WWC and U.S. Cellular Corporation (U.S. Cellular), the parent corporation of appellants Cedar Rapids Cellular and Davenport Cellular. The Attorney General took the position that the liquidated damages provisions of the term service agreements violate the Iowa Consumer Credit Code, Iowa Code Chapter 537, which prohibits charges for default in certain consumer transactions. He also objected, among other things, to the companies' alleged practice of using arbitration clauses in the term service agreements to resolve customer disputes but using small claims court to collect customer debts.

On April 11, 2000, after negotiations between the Attorney General and U.S. Cellular broke down, the appellants[1] filed this action in the United States District

---

[1] Another wireless service provider, Iowa Wireless Services, L.P., was a plaintiff below, but is not a party to this appeal.

Court for the Northern District of Iowa. In their complaint, the appellants seek a declaration of the following:

1. The Iowa Consumer Credit Code does not apply to their cellular telephone businesses in general or, in particular, to the cancellation fees in their term service agreements.

2. The Federal Communications Act preempts: (a) application of the Iowa Consumer Credit Code to the term service agreements, (b) any award for money damages under Iowa consumer protection statutes, and (c) any state attempt to regulate wireless service providers in a way that is not "competitively neutral."

3. Enforcement of the Iowa Consumer Credit Code against the term service agreements unlawfully interferes with interstate commerce.

4. The Federal Arbitration Act preempts application of the Iowa Consumer Credit Code to the arbitration clauses in the term service agreements.

5. The provisions of the Iowa Consumer Credit Code sought to be enforced against the wireless service providers are void for vagueness under the Due Process Clause of the Fourteenth Amendment.

The appellants also seek to enjoin the Attorney General from "taking any action under or to enforce" the Iowa Consumer Credit Code against them.

On the same day the appellants filed this case, the Attorney General brought a civil enforcement action against U.S. Cellular in state district court in Polk County, Iowa. In the state action, the Attorney General alleges U.S. Cellular is violating numerous provisions of the Iowa Consumer Credit Code and the other provisions of Iowa law. In particular, the Attorney General's enforcement action alleges the following violations of Iowa law:

1. U.S. Cellular has refused to allow customers to cancel term service agreements unless they pay a cancellation fee.

2. U.S. Cellular has misrepresented to customers that they have no right to cancel the term service agreements without paying cancellation fees.

3. U.S. Cellular has refused to cease billing customers under canceled term service agreements without full payment, including payment of cancellation fees.

4. U.S. Cellular has sought to collect attorney fees under the term service agreements or has authorized the collection of such fees by others.

5. U.S. Cellular has misrepresented that customers would receive "free" telephones and "free" minutes while using other fees to recoup the costs of these products and services.

6. U.S. Cellular has misrepresented that customers would receive "free" statewide roaming while assessing roaming charges for some in-state calls.

7. U.S. Cellular advertised and entered into contracts for free weekend hours on Friday evening and Monday morning and then modified its agreements by ending free weekend hours on Friday and Monday.

8. U.S. Cellular invokes the arbitration clauses in its term service agreements when it is sued by customers but uses the courts to collect unpaid accounts, penalties, and attorney fees from its customers.

The Attorney General's action seeks, among other things, injunctive relief against U.S. Cellular and "its partners, officers, employees, agents, successors, and all other persons, corporations and other entities acting in concert or participating with U.S. Cellular."

U.S. Cellular removed the Attorney General's civil enforcement action to the United States District Court for the Southern District of Iowa. That case was subsequently remanded to state court for lack of subject matter jurisdiction.

The Attorney General filed a motion to dismiss this lawsuit. The district court held that it lacked jurisdiction over the appellants' preemption claims, reasoning that those claims are mere federal defenses that cannot form a basis for federal jurisdiction. The district court ruled that it did have jurisdiction over the appellants'

remaining federal claims – those arising under the dormant commerce clause and the due process clause. It also assumed, without deciding, that it had supplemental jurisdiction over the appellants' state law claims. Nevertheless, citing various abstention doctrines, the district court dismissed the case.

The appellants now appeal the district court's dismissal of their claims. They argue that the district court had subject matter jurisdiction over all of their federal claims and that it erred in abstaining from the federal claims it did not dismiss. Appellants Cedar Rapids Cellular and Davenport Cellular also argue that, even if it was appropriate for the district court to abstain, their claims should have been stayed rather than dismissed.

## II.    STANDARD OF REVIEW

A district court's ruling on subject matter jurisdiction is reviewed under the de novo standard. Charchenko v. City of Stillwater, 47 F.3d 981, 982-83 (8th Cir. 1995). A district court's decision to abstain is reviewed for abuse of discretion, with underlying legal decisions receiving plenary review. Beavers v. Arkansas State Bd. of Dental Exam'rs, 151 F.3d 838, 840 (8th Cir. 1998).

## III.    JURISDICTION

The district court ruled that the appellants' preemption claims cannot support federal jurisdiction because they are in the nature of federal defenses. The district court's reasoning might have had force if the appellants were only seeking a declaratory judgment. See Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 248 (1952) (dictum). However, because the appellants are also seeking injunctive relief on their preemption claims, the district court has jurisdiction to hear them. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983); Middle South Energy, Inc. v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404, 409-10 & 410 n.14 (8th Cir. 1985).

The Attorney General did not file a cross-appeal, but argues that the district court should have at least dismissed the appellants' state law claims. The general rule is that the Eleventh Amendment bars federal courts from enjoining state officers from violating state law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984). The district court acknowledged the Pennhurst rule, but expressly declined to address whether this case presents an exception to it. We leave it to the district court to decide this question in the first instance.

## IV.   ABSTENTION

Our finding that the district court has subject matter jurisdiction over all the appellants' federal claims does not resolve this appeal. We must also decide whether the district court acted properly in abstaining from the appellants' claims. As discussed below, we uphold its decision to abstain from the claims of Cedar Rapids Cellular and Davenport Cellular, but not from the claims of WWC. Although the district court cited three separate abstention doctrines, the only appropriate basis for abstention in this case is Younger v. Harris, 401 U.S. 37 (1971). Our decision in favor of abstention applies to all of the claims raised by Cedar Rapids Cellular and Davenport Cellular.

### A.    Abstention Under Brillhart and Colorado River

Two of the abstention doctrines cited by the district court are inapplicable to this case. The district court did not have discretion to abstain under Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942). Brillhart applies to declaratory judgment actions generally, but not to actions that, like this one, involve good faith claims for injunctive relief. See Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 652 (5th Cir. 2000).

The district court also lacked discretion to abstain under Colorado River Conservation District v. United States, 424 U.S. 800 (1976). In reaching this conclusion, we have examined all six of the factors listed in Colorado River.

See Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc., 48 F.3d 294, 297-300 (8th Cir. 1995) (listing and applying these factors). We note particularly that federal law controls most of the appellants' claims, and that this factor is a "major consideration" against abstention. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 26 (1983).

### B.    Abstention Under Younger

The doctrine of Younger abstention, which reflects the principle of comity inherent in our federal system of government, provides much stronger support for abstention in this case. In Younger, the Supreme Court held that a district court erred in enjoining a state criminal prosecution when the plaintiff's federal claim could also have been raised as a defense in the state prosecution. Younger, 401 U.S. at 53-54. In so ruling, the Court specifically noted the absence of any evidence of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Id. at 54. It also suggested that abstention might not be appropriate if the statute the state was seeking to enforce was "flagrantly and patently violative of express constitutional prohibitions." Id. at 53.

The Supreme Court has extended Younger to forbid the injunction of certain state civil enforcement actions. In Huffman v. Pursue, Ltd., 420 U.S. 592, 594, 603-5 (1975), the Court held that Younger applied to a federal action that sought to interfere with a state civil proceeding to abate the showing of obscene movies. In Trainor v. Hernandez, 431 U.S. 434, 447 (1977), the Court ruled that Younger prevented a district court from enjoining an allegedly unconstitutional civil action brought by a state to recover fraudulently obtained welfare payments. As the Court later explained, "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

We have also applied <u>Younger</u> outside the context of state criminal prosecutions. In <u>Fuller v. Ulland</u>, 76 F.3d 957 (8th Cir. 1996), we explained that "<u>Younger</u> directs federal courts to abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." <u>Fuller</u>, 76 F.3d at 959. In this case, the action pending in state court is undisputedly a judicial proceeding. As we explain below, the Attorney General's state court action also implicates important state interests and affords an adequate opportunity to raise the issues underlying these federal claims.

The State of Iowa has an important interest in enforcing its consumer protection statutes. None of the appellants dispute this general proposition. States have a long history of regulating against unfair business practices. <u>See</u> <u>California v. ARC Am. Corp.</u>, 490 U.S. 93, 101 (1989). In a different context, the Supreme Court has recognized that states have an important interest in protecting the public from deceptive business practices. <u>See</u> <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557, 563 (1980) (evaluating state interests in the context of commercial speech). Federal telecommunications law implicitly acknowledges the importance of this interest by leaving states some latitude to "protect the public safety and welfare" and "safeguard the rights of consumers." 47 U.S.C. § 253(b).

The appellants nonetheless argue that Iowa lacks an important interest in enforcing these particular statutes against them on the grounds that such enforcement has been preempted by federal law. In the past, we have held that "[t]he legitimate state interest contemplated by <u>Younger</u> does not exist when the state action has been preempted or foreclosed by the Constitution." <u>Middle South Energy</u>, 772 F.2d at 417. More recently, however, the Supreme Court has made clear that the mere assertion of a federal preemption claim, even a "substantial" one, does not compel the exercise of federal jurisdiction. <u>New Orleans Pub. Serv., Inc. v. Council of City of New</u>

-9-

Orleans, 491 U.S. 350, 364-67 (1989). To the extent Middle South Energy suggests otherwise, it is no longer good law. Thus, the appellants' federal preemption claims do not stand in the way of Younger abstention.

In New Orleans Public Service, the Supreme Court left open the possibility of an exception to Younger for preemption claims that are "facially conclusive." See New Orleans Pub. Serv., 491 U.S. at 367. Some federal courts of appeal have found that such an exception exists. See, e.g., Midwestern Gas Transmission Co. v. McCarty, 270 F.3d 536, 539 (7th Cir. 2001) (holding that abstention was inappropriate when the state asserted interests that "clearly are under exclusive federal control"); Communications Telesystems Int'l v. California Pub. Util. Comm'n, 196 F.3d 1011, 1017 (9th Cir. 1999) (holding that preemption must be "readily apparent" to prevent abstention). The appellants, however, have not argued that such an exception exists or that their preemption claims fall within it. We therefore decline to rule on whether such an exception is available on the facts of this case.[2]

Our conclusion that Younger applies despite the appellants' preemption claims finds support in our prior case law. In Fuller, we applied Younger to prevent interference with a civil enforcement proceeding which the Minnesota Commissioner of Commerce brought against the trustee of a workers' compensation plan. The trustee in Fuller argued that Younger did not apply because the state enforcement

---

[2] The appellants' main preemption claim is based upon section 332 of the Federal Communications Act which prohibits states from regulating "the entry of or the rates charged by any commercial mobile service." 47 U.S.C. § 332(c)(3). We note that the necessity of developing a factual record on the appellants' business practices and rate structure would appear to foreclose any argument of conclusive preemption. See New Orleans Pub. Serv., 491 U.S. at 350. In addition, at least one federal court has held that a state law challenge to cancellation fees such as those charged by the appellants is not clearly preempted by federal law. See Esquivel v. Southwestern Bell Mobile Sys., Inc., 920 F. Supp. 713, 715-16 (S.D. Tex. 1996). Cf. GTE Mobilenet of Ohio v. Johnson, 111 F.3d 469, 478 (6th Cir. 1997).

action was preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461. Fuller, 76 F.3d at 960. We held that the state court was competent to decide whether preemption applied and affirmed the district court's decision to abstain under Younger. Id. The courts of Iowa are competent to rule on the appellants' preemption claims.

We also reject the appellants' suggestion that Younger abstention is inappropriate because their federal lawsuit involves claims under 42 U.S.C. § 1983. As appellants note, Justice Brennan believed that "Younger is, in general, inapplicable to civil proceedings, especially when a plaintiff brings a § 1983 action alleging violation of federal constitutional rights." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 19 (1987) (Brennan, J., concurring). Appellants fail to note, however, that Justice Brennan developed this belief in dissent. See Huffman, 420 U.S. at 613 (Brennan, J., dissenting). The Supreme Court has applied Younger in cases involving state civil proceedings and federal claims under § 1983, Juidice v. Vail, 430 U.S. 327, 330 (1977), and so have we, Ronwin v. Dunham, 818 F.2d 675, 676 (8th Cir. 1987).

While Younger clearly applies despite the nature of the appellants' claims, we must still decide whether it requires abstention in this case. The moving force behind Younger abstention is the promotion of comity between state and federal judicial bodies. See New Orleans Pub. Serv., 491 U.S. at 364. As the Court explained in Younger, this notion of comity represents a system "in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Younger, 401 U.S. at 44. We must therefore decide whether the relief sought by the appellants would unduly interfere with ongoing state judicial proceedings.

At first glance, it appears that the appellants' request for injunctive relief in this case would not interfere with the action pending in state court. Judging solely from the parties named, the two cases seem to be unrelated. The Attorney General's action in state court names U.S. Cellular as a defendant but not any of the appellants. The complaint in this case seeks to enjoin the Attorney General only from proceeding against the federal plaintiffs, a group that does not include U.S. Cellular. A closer look at the two actions, however, reveals a close connection between the state court action against U.S. Cellular and the federal claims of Cedar Rapids Cellular and Davenport Cellular.

It is not a prerequisite to Younger abstention that the federal plaintiffs also be defendants in the action pending in state court. The Supreme Court's decision in Hicks v. Miranda, 422 U.S. 332 (1975), involved a federal challenge to a state obscenity statute by the owners of a theater and a state criminal prosecution of two of their employees. According to the Court, Younger prevented the federal district court from granting relief to the theater owners, even though they were not defendants in the state court action, because the owners' interests were "intertwined" with those of the employees, and the owners "sought to interfere with the pending state prosecution." Id. at 348-49. Following Hicks, we have held the parties in federal and state court need not be identical "where the interests of the parties seeking relief in federal court are closely related to those of parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings." Womens Servs., P.C. v. Douglas, 653 F.2d 355, 358 (8th Cir. 1981) (quoting Stivers v. Minnesota, 575 F.2d 200, 203 (8th Cir. 1978)).

Under this standard, the district court was correct in abstaining from the claims of appellants Cedar Rapids Cellular and Davenport Cellular. The Attorney General's state court action seeks an injunction against "all other persons, corporations and other entities acting in concert or participating with" U.S. Cellular. Cedar Rapids Cellular and Davenport Cellular concede that U.S. Cellular has a controlling interest

-12-

in their operations. If these two appellants obtain a federal injunction against action by the Attorney General, they could use that injunction to obstruct the Attorney General's attempts to enforce any remedy granted by the state courts. This serious possibility of interference warrants abstention from the claims of Cedar Rapids Cellular and Davenport Cellular.

In contrast, the claims of WWC do not seek to interfere with the proceeding in state court. With respect to WWC, this case closely resembles Doran v. Salem Inn, Inc., 422 U.S. 922 (1975), in which the Supreme Court refused to apply Younger to the federal claims of two bar operators who were not subject to a pending state criminal prosecution simply because their co-plaintiff was. Doran, 422 U.S. at 928-31. The fact the three plaintiffs had "common counsel" and "similar business activities and problems" was not enough to warrant across-the-board abstention, because the three were "apparently unrelated in terms of ownership, control, and management." Id. at 928-29. See also Womens Servs., 653 F.2d at 359. Although WWC's interests are generally aligned with those of U.S. Cellular, it does not have the type of close relationship with U.S. Cellular that Cedar Rapids Cellular and Davenport Cellular do. There is no indication that WWC could use an injunction obtained in this federal action to interfere with the Attorney General's enforcement action against U.S. Cellular.

We reject the Attorney General's argument that his attempts to obtain information from WWC trigger Younger abstention. Administrative proceedings may be judicial for purposes of Younger if they "declare and enforce liabilities" between the parties. Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 602-3 (8th Cir. 1999). The Attorney General's administrative action, however, involves nothing more than an attempt to obtain information about WWC's business practices. See Iowa Code § 714.16(3)-(6) (Supp. 2001). It is not a judicial proceeding because it does not give the Attorney General, or anyone else, the power to declare whether those practices violate Iowa law. See id. Although the Attorney General's demand for

information may ultimately result in a judicial proceeding, there is no indication that a judicial proceeding was imminent at the time this case was filed. Cf. Pincham v. Illinois Judicial Inquiry Bd., 872 F.2d 1341, 1346 (7th Cir. 1989). We therefore hold that Younger does not provide a basis for abstaining from the claims of WWC.

Appellants Cedar Rapids Cellular and Davenport Cellular also argue that their claims should have been stayed instead of dismissed. A stay is preferred to dismissal in cases where there is a possibility that the parties will return to federal court. Fuller, 76 F.3d at 960-61. Cedar Rapids Cellular and Davenport Cellular have not clearly explained how they might return to federal district court. Nevertheless, out of an abundance of caution, and in view of the fact that WWC's claims will remain pending in the district court, we also find that the district court should have stayed the claims brought by Cedar Rapids Cellular and Davenport Cellular.

## V.    CONCLUSION

The district court had subject matter jurisdiction over all of the appellants' federal claims. While the district court correctly chose to abstain from the claims of Cedar Rapids Cellular and Davenport Cellular, it should have stayed those claims rather than dismissing them. The district court should not have abstained from the claims of WWC. Accordingly, we vacate the judgment of dismissal and remand to the district court for entry of a stay of the claims brought by Cedar Rapids Cellular and Davenport Cellular. On remand, the district court should hear the federal claims brought by WWC and should determine whether it has jurisdiction over WWC's state law claims.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-