# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3870

_____

| | | |
|---|---|---|
| Yamaha Motor Corporation, U.S.A., | * | |
| | * | |
| Plaintiff / Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Patricia Stroud, Individually, and as | * | |
| Director of the Arkansas Motor | * | |
| Vehicle Commission; Joe Morgan, | * | |
| Individually, and as a member of the | * | Appeal from the United States |
| Arkansas Motor Vehicle Commission; | * | District Court for the Eastern |
| L.J. Simms, Individually, and as a | * | District of Arkansas. |
| member of the Arkansas Motor Vehicle | * | |
| Commission; Shawn Chafin, | * | |
| Individually, and as a member of the | * | |
| Arkansas Motor Vehicle Commission; | * | |
| Lonnie Campbell, Individually, and as | * | |
| a member of the Arkansas Motor | * | |
| Vehicle Commission; Eddie Hardin, | * | |
| Individually, and as a member of the | * | |
| Arkansas Motor Vehicle Commission, | * | |
| | | |
| Defendants / Appellees. | | |

_____

Submitted: May 10, 1999
Filed:   June 3, 1999

_____

Before WOLLMAN, Chief Judge, BEAM and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

This case arises from the attempt of Yamaha Motor Corporation U.S.A. (Yamaha) to open a new Arkansas dealership for its motorcycles and all-terrain vehicles. It understood that a 1997 legislative amendment had excluded this type of dealership from certain statutory application requirements, but state officials proceeded to invoke notice and hearing procedures which Yamaha believed were no longer applicable. Yamaha responded by filing this 42 U.S.C. § 1983 action which the district court dismissed on the basis of abstention, and Yamaha appeals. We affirm the decision to abstain, but remand with instructions to vacate the dismissal of this action and to stay it pending completion of the state proceedings.

I.

On January 15, 1998 Yamaha and Bradford Marine Inc. (Bradford) entered into an agreement under which Bradford was to become a dealer for Yamaha motorcycles, Riva Motor Scooters, and all-terrain vehicles (ATVs). All such dealers in the state of Arkansas are required to obtain a Motor Vehicle Dealer license from the Arkansas Motor Vehicle Commission (the Commission). Ark Code Ann. § 23-112-301. Section 311(a) of the Arkansas Motor Vehicle Commission Act (the Act) requires manufacturers of motor vehicles to notify existing dealers in the relevant market area of their intentions to establish a new dealership and provides existing dealers twenty days to file a protest. Ark. Code Ann. § 23-112-311(a). If there is a protest, a hearing is held before the Commission to determine whether "good cause" exists to deny the application for the new dealership license. Id. The Arkansas Legislative Assembly amended the Act in 1997 by providing in § 311(a) that notice must be provided "in all instances" and by adding § 311(b)(3) which states that "this section" does not apply "to new motor vehicle dealers of motorcycle, motorized cycles and motor driven all-terrain

2

dealers."  1997 Ark. Acts 1154.[1]  It is this amendment on which Yamaha relied in proceeding with its agreement with Bradford.  Yamaha interpreted the amendment to exempt the establishment of the Bradford dealership from the notice and hearing procedures in § 311(a).

Before entering into the agreement with Bradford, Yamaha had in October 1997 requested an opinion from the Commission regarding its interpretation of § 23-112-311 as amended, but one was apparently never provided.  Patricia Stroud, Director of the Commission, told Yamaha that an opinion had been requested from the Attorney General's Office and that it would be mailed to Yamaha after the Commission's December 1997 meeting.  Yamaha maintains, and the appellees do not dispute, that the Attorney General's office declined to respond to the request or to advise the Commission regarding it because an opinion would be subject to discovery under the Arkansas Freedom of Information Act.

In late February 1998, Director Stroud sent notices to existing Yamaha dealers in the relevant market area informing them of the planned new dealership Yamaha

---

[1]The full text of Ark. Code Ann. § 23-112-311(b) as amended by Act 1154 reads:

(b) This section does not apply:
(1) To the relocation of an existing dealer within that dealer's relevant market area, provided that the relocation not be at a site within seven (7) miles of a licensed new motor vehicle dealer for the same line make of motor vehicles;
(2) If the proposed new motor vehicle dealer is to be established at or within two (2) miles of a location at which a former licensed new motor vehicle dealer for the same line make of new motor vehicle has ceased operating within the previous two (2) years; or
(3) To new motor vehicle dealers of motorcycle, motorized cycles and motor driven all-terrain vehicles.

wanted to establish with Bradford. On March 13, 1998 a joint protest was filed with the Commission by Richard's Honda Yamaha and North Little Rock Honda Yamaha challenging the proposed Bradford dealership. On March 16, Stroud notified Yamaha that a protest had been filed, that a hearing would be scheduled, and that the new dealership could not be established or offer goods for sale until the hearing was held or the protest formally withdrawn. In the interim the Commission passed an emergency regulation on March 11, 1998, to be effective immediately, providing that an additional new motor vehicle dealer within the relevant market areas would be licensed only if the Commission were to determine good cause existed to issue the license. Good cause is also a factor listed in § 23-112-311, but the statutory language provides that good cause must be shown to prevent the addition or relocation of the dealership. Yamaha says this shifts the burden from the protestor to the applicant. The new regulation also added a factor to be considered in the good cause inquiry -- the manufacturer's ability to meet the supply needs of existing dealers. Yamaha says this factor was one of the primary issues raised in opposition to its proposed new dealership.

Yamaha filed this federal action under 42 U.S.C. §1983 against Stroud on April 7, 1998, alleging violations of its constitutional right to contract. It claimed Stroud willfully and in bad faith invoked inapplicable statutory provisions in processing the license application for Yamaha's dealership and that this impaired its right to contract. U.S. Const. Art I, § 10. It requested a declaratory judgment that Stroud's actions violated Yamaha's constitutional rights, preliminary and permanent injunctions prohibiting Stroud from applying the challenged provisions to Yamaha, compensatory and punitive damages, costs and attorneys fees, and all other legal and equitable relief deemed appropriate. Stroud responded with a motion to dismiss under the Younger abstention doctrine and for failure to state a claim.

The day after it filed suit in federal court, Yamaha also moved to have the protest before the Commission dismissed. The motion was denied at the May 20, 1998 Commission meeting, and Yamaha then moved to file an amended complaint to add

4

five commissioners as defendants -- Joe Morgan, L.J. Simms, Shawn Chaffin, Lonnie Campbell, and Eddie Ahrdin. It alleged they had acted willfully and in bad faith to deprive Yamaha of its constitutional right to contract with Bradford. The district court denied Stroud's motion to dismiss, reasoning that Yamaha might not have an adequate opportunity to raise any constitutional challenge before the Commission and that "other unusual circumstances" precluded abstention. The court granted Yamaha's motion to file an amended complaint, and denied its motion to disqualify opposing counsel.

The proceedings before the Commission continued to develop. Yamaha moved to have the five defendant commissioners recused from hearing its administrative case, arguing they would appear to be biased because of their status as defendants. All of the regular members of the Commission then recused themselves from considering Yamaha's motion, and a Special Commission was appointed by the Governor. Three commissioners subsequently attempted to reassert themselves into the proceedings, but were disqualified from doing so by the Special Commission. This specially constituted commission held a hearing on the protest in July 1998, and then unanimously denied Yamaha's motion to dismiss. By a vote of five to three it also found good cause existed for the protest and decided not to issue a new license. Yamaha filed an appeal of the Special Commission's decision in the Circuit Court of Pulaski County, where it apparently remains pending.

Stroud and the five named commissioners filed a second motion to dismiss, and the district court decided to abstain after considering what had transpired since the first motion. It found that extraordinary measures had been taken in order to deal impartially with Yamaha's complaints and issues. It granted the motion to dismiss by the state parties without indicating whether it was doing so with or without prejudice.

Yamaha appeals on the basis that abstention was not required because it will not have an adequate opportunity to raise its federal claims in any pending state proceeding and because of the bad faith of the Arkansas officials. It also argues that even if

abstention were proper, the district court should have stayed the action rather than dismiss it. It also seeks to add to the record to support its claims based on events which occurred after the filing of its original complaint. Its motion has been granted to supplement the record with a copy of Senate Bill 484, introduced in the 1999 Legislative Session of the Arkansas General Assembly. That bill deleted the section on which Yamaha had relied and added certain restrictions on opening dealerships for motorcycles and ATVs.[2] Yamaha also moved to add a transcript of the testimony of Stroud at a hearing before the special commissioners.[3]

II.

---

[2]Senate Bill 484 would delete section (b)(3) and add a new section (c):

The exceptions listed in subsection (b) do not apply to new motor vehicle dealers of motorcycle, motorized cycles, and motor driven all-terrain vehicles, provided the relocation of an existing new dealer of motorcycles, motorized cycles and motor driven all-terrain vehicles within that dealer's relevant market area, provided that the relocation not be a site within thirty (30) miles of a licensed new dealer of motorcycles, motorized cycles, and motor driven all-terrain vehicles for the same line make of new motorcycles, motorized cycles and motor driven all-terrain vehicles.

[3]In July 1998, Stroud testified that the 1997 amendments had been intended to strengthen the Act, and that the critical amendment as drafted and sent to the association in charge of the Commission's legislative package read "this section shall not apply to *the relocation of* new motor vehicle dealers of motorcycle, motorized cycles and motor-driven vehicles." She explained that key words appeared to have been left out through a clerical error that went unnoticed prior to the passage of the amendments. Yamaha seeks to introduce this testimony as evidence of bad faith, but it has not provided a reason for its failure to present it to the district court. This motion to supplement the record on appeal is denied without prejudice to Yamaha's right to seek to submit the evidence in the district court at such time as the stay might be lifted. See Dakota Indus. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir.1993).

A decision to abstain under the line of cases flowing from <u>Younger v. Harris</u>, 401 U.S. 37 (1971), is reviewed for abuse of discretion. <u>Fuller v. Ulland</u>, 76 F.3d 957, 959 (8th Cir. 1996). In <u>Younger</u>, the Supreme Court articulated the strong policy considerations that counsel against the exercise of jurisdiction in the face of ongoing state proceedings:

> [T]he concept [of federalism] represent[s] . . .a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

<u>Younger</u>, 401 U.S. at 44. <u>Younger</u> itself involved federal abstention from a request to enjoin a state criminal proceeding, <u>see id</u>. at 53, but similar policy concerns apply when there is a pending state administrative proceeding. <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.</u>, 477 U.S.619 (1986); <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 431-32 (1982).

Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of "bad faith, harassment, or other exceptional circumstances." <u>Middlesex</u>, 457 U.S. at 432, 437. In this case there is no dispute that there is an ongoing state judicial proceeding which implicates significant state interests. Administrative proceedings which declare and enforce liabilities can be state judicial proceedings for purposes of <u>Younger</u> abstention. <u>See, e.g.</u>, <u>Night Clubs, Inc. v. City of Fort Smith</u>, 163 F.3d 475, 479 (8th Cir. 1998); <u>see also</u> <u>Middlesex</u>, 457 U.S. at 433-34. Moreover, the pending appeal in state court of the Commission's licensing decision is an ongoing state judicial proceeding. It is also uncontroverted that Arkansas has an interest in regulating the motor vehicle sales

7

industry. See Ark Code Ann. § 23-112-102(a) ("the distribution and sale of motor vehicles in Arkansas vitally affects the general economy of the state and the public interest and the public welfare."); see also Middlesex, 457 U.S. at 434-35.

Yamaha's principal arguments against abstention are that the state court proceedings will not provide an adequate opportunity for it to litigate its claims and that abstention is inappropriate because of the bad faith of Stroud and the five named commissioners. The cornerstone of the § 1983 claim Yamaha seeks to pursue in federal court is that Stroud and the five Commission members violated Yamaha's constitutional right to contract with Bradford by applying the notice and hearing requirements of § 23-112-311, despite their knowledge that this section did not apply to its new dealership.[4] The ongoing state court proceedings could affect its claim that the defendants' bad faith application of the statute to its dealership violated its constitutional rights because the state court will review the application of the statute to Yamaha and consider whether the 1997 amendment clearly excluded motorcycle and ATV dealerships from the notice and hearing requirements.

Comity favors permitting the Arkansas court system to decide issues of state statutory law, and abstention is called for when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims. Ronwin v. Dunham, 818 F.2d 675 (8th Cir. 1987). This rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987). Moreover, Yamaha has not shown exceptional circumstances making abstention inappropriate. The recusal of all the regular commissioners and the establishment of a Special Commission to hear the protest regarding the Bradford dealership showed an effort to ensure a fair and neutral forum

---

[4]Yamaha has not sought to raise a federal challenge to the Special Commission's decision finding good cause for the joint protest.

8

for the adjudication of issues surrounding the proposed new Yamaha dealership. Yamaha has not alleged that the Arkansas state courts are incompetent, biased, or otherwise incapable of fairly interpreting the Arkansas statute in question. The situation here is not similar to that presented in Yamaha Motor Corp., U.S.A. v. Riney, 21 F.3d 793 (8th Cir. 1994), where the tribunal could be considered incompetent because of bias. The district court's decision to abstain was completely appropriate.

Yamaha further contends that the district court should in any event have stayed the federal claim rather than dismiss it. Younger abstention means that courts should not grant declaratory relief that would interfere with pending judicial proceedings. Night Clubs, Inc., 163 F.3d at 487. Claims for damages are different, however, and a federal court may not decline to exercise jurisdiction over them, Quackenbush, 517 U.S. at 730, unless the damages sought would require a declaration that a state statute is unconstitutional. Quackenbush, 517 U.S. at 719 (preserving holding of Fair Assessment in Real Estate Ass'n., Inc. v. McNary, 454 U.S. 100 (1981).

The ongoing Arkansas proceedings may resolve state law issues dispositive of Yamaha's federal constitutional claim, but they do not provide a forum for Yamaha to seek damages from Stroud and the commissioners. When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed. Night Clubs, Inc., 163 F.3d 475 at 482. As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining. International Assoc. of Entrepreneurs of America v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995). In this case Yamaha seeks compensatory and punitive damages for lost income allegedly arising from the unconstitutional impairment of its right to contract, and there may be viable claims remaining after conclusion of the state proceedings. For these reasons, this action should have been stayed rather than dismissed.

### III.

We affirm the district court's decision to abstain under <u>Younger</u> principles, vacate the dismissal of this action, and remand for entry of a stay pending resolution of the state proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.