Rickey Lee SCHEUERMAN, Plaintiff,

v.

**THE CITY OF HUNTSVILLE, ALABAMA, et al., Defendant.**

No. CIV.A.CV–05–S–843–NE.

United States District Court, N.D. Alabama, Northeastern Division.

June 13, 2005.

William J Baxley, Donald R. James, Jr., Joseph D. Jackson, Jr., Baxley Dillard Dauphin & Midnight, Birmingham, AL, for Rickey Lee Scheuerman.

C. Gregory Burgess, Michael L. Fees, Fees & Burgess C, Huntsville, AL, for City of Huntsville.

## MEMORANDUM OPINION AND ORDER

SMITH, District Judge.

This matter is before the court on defendants' motion to stay all proceedings pursuant to *Younger v. Harris,* 401 U.S.37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), pending the final outcome of a state criminal proceeding against plaintiff, Rickey Lee Scheuerman.[1] Plaintiff filed a response opposing defendants' motion to stay.[2]

### A. Factual Background

Plaintiff filed his complaint in federal court alleging the following facts:

- On or about April 23, 2003, Scheuerman was driving his car on Bailey Cove Road toward his mother's house, within the city limits of Huntsville, Alabama, to do laundry. The windows on Scheuerman's vehicle were down. As Scheuerman was driving, he noticed a car following very close to his rear bumper.

- Scheuerman continued driving and turned onto Chatterson Road. The car behind him continued to follow very closely. Scheuerman turned into a driveway on Chatterson Road in order to run around. Scheuerman noticed the car was still following him as he began to turn around in the driveway. As Scheuerman was turning his car around, he felt a sharp pain in his chest. Unbeknownst to him at the time, Weaber had shot him. Weaber then reached inside Scheuerman's car through the open window and shot him two more times in the stomach at close range. At no time did Weaber tell Scheuerman who he was or make any demands on him.

- After being shot three times by Weaber, Scheuerman drove away from the scene. Weaber fired one more time, but missed Scheuerman. Scheuerman drove approximately 900 feet and exited the car at a family friend's house to call for help. Scheuerman collapsed on the driveway only to wake up with Weaber standing over him pointing his gun at him.

- Scheuerman pleaded for Weaber not to shoot him again. Weaber kicked Scheuerman in the leg, told him to shut up because he was a police officer. This is the first time Scheuerman learned that Weaber was a police officer. A short time later, uniformed officers arrived on the scene. Scheuerman demanded they arrest Weaber, but the officers refused stating that Weaber was a police officer.

- Scheuerman was transported from the scene to Huntsville Hospital by ambulance. Scheuerman remained in a coma for the next six weeks. Scheuerman's injuries included two collapsed lungs, bone and bullet fragments in his intestines, the removal of his spleen and gall bladder and a laceration of his liver. Scheuerman remained in the hospital until June 30, 2003. Scheuerman remained under police guard the entire time he was in the hospital. In fact, Scheuerman was only allowed visitation by his immediate family members on Sundays for five minutes even though his treating physicians requested that Scheuerman be allowed more time to spend with his family.

- Upon Scheuerman's release from the hospital, he was taken directly to the

---

1. *See* doc. no. 7 (motion to stay) and doc. no. 8 (defendants' brief in support of motion to stay).

2. *See* doc. no. 10 (plaintiff's brief in opposition to defendants' motion to stay).

Huntsville City Jail where he was charged with attempted murder of a police officer. Scheuerman is awaiting trial on that charge. The City of Huntsville has refused to pay any of Scheuerman's medical bills even though he was under arrest and in the City of Huntsville's custody the entire time he was in the hospital.[3]

Plaintiff alleges federal claims of excessive force, false arrest and imprisonment, and inadequate training, hiring and supervision under 42 U.S.C. § 1983, as well as state law claims of assault and battery and unlawful detention.[4] Plaintiff seeks compensatory and punitive damages, costs, and attorney's fees, but does not seek injunctive relief.[5]

The indictment against Scheuerman reads as follows:

The Grand Jury of said County charge, that before the finding of this Indictment, RICKEY LEE SCHEUERMAN, whose name is unknown to the Grand Jury other than as stated, did, with the intent to commit the crime of Murder, Section 13A–6–2 of the CODE OF ALABAMA, attempt to commit said offense by backing his motor vehicle over Investigator Jeff Weaber of the Huntsville Police Department, in violation of Section 13A–4–2 of the CODE OF ALABAMA, against the peace and dignity of the State of Alabama.[6]

Scheuerman's criminal trial for attempted murder is scheduled to occur on September 12, 2005.[7] Defendants maintain that plaintiff's civil action in federal court will impermissibly interfere with the ongoing criminal case, and ask the court to stay the federal action until after the criminal case has concluded, "whether by dismissal, plea bargain, acquittal, conviction, and/or appeal." [8]

### B. *Younger* Abstention

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a federal plaintiff challenged the constitutionality of a state statute under which he was being prosecuted as a criminal defendant. Citing the doctrine of equity jurisdiction and notions of comity, the Supreme Court established that federal courts should abstain from entertaining lawsuits by individuals seeking to enjoin a criminal prosecution against them in state court. *See id.* at 44–45, 91 S.Ct. 746. The elements for *Younger* abstention are as follows: (1) do the proceedings constitute an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges. *See 31 Foster Children v. Bush,* 329 F.3d 1255, 1274 (11th Cir.2003). The parties agree that the first two elements are met; the only disagreement is to the third element. In cases seeking injunctive relief, if the elements of *Younger* are met, the court must abstain and dismiss the federal action.

The Supreme Court has not decided whether *Younger* abstention applies when the relief sought in federal court is damages for alleged police misconduct when effecting an arrest in an underlying state criminal case. *See Deakins v. Monaghan,* 484 U.S. 193, 202 & n. 6, 108 S.Ct. 523, 98

---

3. Doc. no. 1 (Complaint) at 1–3.

4. *See generally id.*

5. *See generally id.*

6. *See* attachment to doc. no. 8 at unnumbered p. 1.

7. *See* doc. no. 8 (defendants' brief in support of motion to stay) at 2.

8. *Id.*

L.Ed.2d 529 (1988) (reserving the question as to the extent the *Younger* doctrine applies to a federal action seeking only monetary relief, but noting that the district court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding). The circuit courts of appeals are divided on this issue,[9] but the Eleventh Circuit has indicated its approval of applying the *Younger* doctrine to damages actions. *See Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir.1985) (*per curiam*) (reversing dismissal of § 1983 action, but ordering district court to abstain from resolving the merits of petitioner's claims until state court conviction is reviewed by the Georgia Court of Appeals); *see also Pompey v. Broward County*, 95 F.3d 1543, 1552 n. 12 (11th Cir.1996) (dictum) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles.").

■ Defendants do not attempt to seek a dismissal, but instead seek a stay of federal proceedings until the underlying criminal case has ended. Thus, the court is faced with the more difficult question: Under what circumstances is a stay warranted in a damages action under *Younger*? "Damages actions are different from actions that seek only declaratory or injunctive relief in two important respects:

The relief is not discretionary, and it may not be available in the state proceeding." *Gilbertson v. Albright*, 381 F.3d 965, 980 (9th Cir.2004) (en banc). Further, the proponent of a stay bears the burden of establishing its need. *See Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

In *Doby, supra.*, the Eleventh Circuit found that a *pro se* prisoner's § 1983 claim raised the identical Fourth Amendment claims that were pending before the state court of appeals in the challenge to his underlying conviction. As a result, the court determined that the district court should abstain from resolving the merits of the prisoner's claims until the state court of appeals issued its final decision. 758 F.2d at 1406. Similarly, in *Simpson v. Rowan*, 73 F.3d 134 (7th Cir.1995), an Illinois prisoner, whose conviction for felony murder was pending on appeal, filed a § 1983 action, asserting violations of the Fourth Amendment. The Illinois prisoner sought damages for injuries allegedly caused by the warrantless search of his apartment and his unlawful arrest, claims involved in the underlying state court criminal prosecution. The Seventh Circuit found the potential for federal-state friction obvious and determined a stay was required until the Illinois Supreme Court resolved the challenge to the underlying

---

9. The majority of circuits have recognized circumstances wherein a stay of damages action is warranted under *Younger* abstention principles. *See Gilbertson v. Albright*, 381 F.3d 965 (9th Cir.2004) (*en banc*); *Weitzel v. Division of Occupational and Professional Licensing of the Dep't of Commerce*, 240 F.3d 871 (10th Cir.2001); *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir.2000); *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603–04 (8th Cir.1999); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1076 (6th Cir.1998); *Simpson v. Rowan*, 73 F.3d 134, 137–39 & nn. 5–6 (7th Cir.1995); *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 15 n. 1 (1st Cir.1992); *Traverso v. Penn*, 874 F.2d

209, 213 (4th Cir.1989); *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988).

The Fifth Circuit has provided conflicting opinions on this issue. *Compare Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir.1995) (holding that *Younger* has no application in actions seeking only damages); *Allen v. Louisiana State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir.1988) (same) *with Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir.1994) (*per curiam*) (holding that *Younger* does apply to damages actions and staying civil action until state criminal proceeding has concluded).

criminal conviction. The court reasoned that, because Simpson's civil rights claims sought monetary damages, relief that was unavailable from the pending state proceedings, dismissal was inappropriate.

 In the instant case, the court is not confronted with identical claims being raised in both the state and federal proceedings as in *Doby* or *Simpson.* As plaintiff points out, he is being charged in state court for actions that preceded those facts forming the basis of his federal complaint. Plaintiff further argues forcefully that the third *Younger* element is not met, because the state criminal action against him does not provide adequate opportunity to raise constitutional claims as they are separate and independent of the state action and arise out of matters independent of those surrounding the charge of attempted murder. Defendants merely state in a conclusory fashion that "Scheuerman has an adequate opportunity to raise any constitutional issues he has asserted in his complaint in this case in his criminal case; thus, the third element is met as well." [10] This argument (if it may be described as such) will not suffice. It is not at all clear to the court how Scheuerman can raise his constitutional claims concerning defendant Weaber's use of force, which occurred *after* the attempted murder alleged in the state indictment, as a defense in his criminal trial.

The parties cite various unpublished opinions from the Northern District of Illinois to support their positions. Because these cases offer the most factually similar circumstances to the instant case, the court will discuss these cases in turn.

Defendant cites *Robinson v. Lother,* No. 04 C 2382, 2004 WL 2032120 (N.D.Ill., Sept.1, 2004), a case involving a civil rights plaintiff asserting claims of excessive force, false imprisonment, and unlawful arrest stemming form her arrest during which defendant police officers allegedly punched and pepper-sprayed plaintiff. In state court, the plaintiff had been charged with aggravated assault, resisting a peace officer, two counts of battery, and criminal damage to property. The plaintiff was found guilty of resisting a peace officer and her appeal of that verdict was pending when her federal lawsuit was filed. In her appellate brief in the state criminal proceeding, the plaintiff argued that the issue of whether the officer used excessive force was central at trial.

The district court found that *Younger* applied, and stayed the action pending the outcome of the plaintiff's state criminal proceedings. Key to the district court's ruling was the nature of the state criminal charge of resisting a police officer, and that Illinois law recognized that an accused may defeat a charge of resisting a police officer where the accused invokes the right of self-defense, and the evidence shows that the police officer used excessive force. 2004 WL 2032120, *3. Contrastingly, in the instant case, the charge of attempted murder is not so related to Scheuerman's federal civil rights complaint alleging excessive force to cause any obvious federal-state tension. The constitutional challenge to defendant Weaber's alleged excessive force would not be a defense to a charge of attempted murder. Moreover, even if Scheuerman were found guilty of attempted murder, defendant Weaber's use of force *after* the alleged attempted murder could still be determined by a jury to be constitutionally excessive. *See Gregory v. Oliver,* 226 F.Supp.2d 943, 952 (N.D.Ill. 2002) ("It is apparent that in some instances a Section 1983 claim does not contradict the events that resulted in a plaintiff's convictions—two obvious examples would be an officer's unjustified imposition of

---

**10.** Doc. no. 8 (defendants' brief in support of motion to stay) at 4.

excessive force in an overreaction to an arrestee's assault, or the imposition of excessive force after the event that led to a resisting-arrest conviction.")

More analogous are the two cases cited by plaintiff, *Holten v. City of Genoa*, No. 02 C 50201, 2002 WL 32128773 (N.D.Ill., July 8, 2002), and *Soriano v. Town of Cicero*, No. 04 C 2774, 2004 WL 2966967 (N.D.Ill., Nov.22, 2004). In *Holten*, the plaintiff claimed a police officer shot him several times without justification. After the shooting, the plaintiff was taken to the hospital where he remained in intensive care for ten days. The state charged plaintiff Holten with reckless conduct, based on the officer's allegation that Holten "rammed a 1994 Buick LeSabre he was driving into a police car," next to which the officer was standing. 2002 WL 32128773, *1. The district court denied the defendant's motion to stay, reasoning that defendant had failed to point out how plaintiff's excessive force claim under § 1983 would raise constitutional issues that had any bearing on the state criminal proceedings, let alone undermine the state courts' consideration of such issues.

Similarly, in *Soriano*, the plaintiff alleged that a police officer used unjustified, unlawful force in shooting him through the spinal cord, and further alleged that other officers watched the incident without intervening. The Town of Cicero brought a criminal action against plaintiff, alleging that he committed aggravated battery of police officers by attempting to use his car to strike the police officer, thus contending that the officers were justified in using deadly force. The district court, agreeing with the rationale in *Holten*, found that *Younger* abstention was not warranted because the criminal claims involved plaintiff's conduct before he was injured, and it was not evident how plaintiff's constitutional claims in the federal action would interfere with the state criminal proceeding.

The court concludes that a stay on the grounds of *Younger* is not warranted. The applicability of *Younger* to the facts of this case is questionable, because it does not appear the third element has been met, and plaintiff's constitutional claims have no bearing on the state criminal proceeding.

## C. Whether a Stay is Otherwise Appropriate

■ A district court has broad discretion to stay proceedings as an incident to its power to control its own docket. *See Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "Especially in cases of extraordinary public moment, [a party] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256, 57 S.Ct. 163. The court is mindful, however, that the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.1980) (*en banc*).

Courts generally have considered the following factors in determine whether to stay a civil proceeding by reason of a pending criminal proceeding:

(1) the private interests of the plaintiff[ ] in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff[ ] if delayed; (2) the private interests of and burden on the defendant[s]; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

*Arden Way Associates, et al. v. Boesky, et al.*, 660 F.Supp. 1494, 1496–97 (S.D.N.Y.

1987) (citations omitted); *see also Federal Sav. and Loan Ins. Corp. v. Molinaro,* 889 F.2d 899 (9th Cir.1989).

■ Defendants present two additional arguments for staying this case until the conclusion of Scheuerman's criminal proceedings. First, defendants argue that Scheuerman's entitlement to discovery in this civil proceeding would interfere with, and allow him access to materials he otherwise could not have prior to, his criminal trial. As an example, they point to plaintiff's prior unsuccessful attempt to obtain discovery in his criminal case related to any review hearing of defendant Weaber and the incident the subject of this civil complaint. This information appears highly relevant to the instant civil proceeding. If the mandatory disclosure and discovery requirements of a federal lawsuit prejudicially impact the underlying criminal proceeding, it is for the Madison County District Attorney's office to intervene and to explain in detail what that impact is. Further, the use of protective orders may assist the parties in proceeding with this litigation in a timely manner.

■ Second, defendants argue that Scheuerman may invoke his Fifth Amendment privilege against self-incrimination and refuse to respond to defendants' discovery requests. In the context of an assertion of the privilege against compulsory self-incrimination, the Eleventh Circuit requires a stay of a civil proceeding pending resolution of a related criminal prosecution "only when 'special circumstances' so required in the 'interests of justice.'" *United States v. Lot 5, Fox Grove, Alachua County, Florida,* 23 F.3d 359, 364 (11th Cir.1994). No such "special circumstance" exists. Further, defendants' concern is entirely too speculative and hypothetical at this time. It is not at all clear to the court how any potential assertion of Fifth Amendment rights affects either party to the detriment of the other at this stage of the proceedings. *See Arden Way Associates, et al. v. Boesky, et al.,* 660 F.Supp. at 1498.

In balancing the relevant factors, the court finds both plaintiff and the public have a strong interest in the timely disposition of this civil rights action. Any delay "would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton v. Jones,* 520 U.S. 681, 707–08, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). The corresponding burden to defendants and others involved in prosecuting Scheuerman is minimal given the substantive distinction between the charged conduct and the allegations in the instant civil complaint. Staying this entire case until the conclusion of the criminal proceeding, including an appeal process, would be a gross overreaction under the circumstances.

## CONCLUSION

For the foregoing reasons, defendants' motion to stay is DENIED. Defendants are ordered to file an answer on or before June 20, 2005.