# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1968
_____

Ritchie Capital Management, L.L.C.; Ritchie Capital Management, Ltd.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investments I, L.L.C.; Ritchie Capital Structure Arbitrage Trading, Ltd.,

*Plaintiffs - Appellants,*

v.

BMO Harris Bank, N.A., as successor to M&I Marshall & Ilsley Bank,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 8, 2017
Filed: August 17, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This suit arises out of the collapse of Thomas Petters's massive Ponzi scheme. Ritchie Capital Management, one of Petters's creditors, appeals the district court's dismissal of its claims against BMO Harris, the successor-in-interest to M&I Bank. Ritchie seeks damages from BMO based on M&I's alleged collusion with Petters and

his companies. The district court abstained from exercising jurisdiction and then dismissed Ritchie's claims. We affirm the district court's decision to abstain, but vacate the judgment dismissing the case and remand for the court to enter a stay.

I.

Petters's Ponzi scheme involved convincing investors to loan him money on the pretense that Petters would purchase and resell wholesale consumer merchandise. Petters fabricated purchase orders from big-box retailers to make it appear that his company, Petters Company, Inc. (PCI), was generating profits from these resales. Instead of purchasing merchandise, PCI rerouted the money through M&I bank accounts back to other PCI entities and to Petters. From 2001 to 2008, PCI used at least one M&I checking account exclusively for fraudulent transactions.

Ritchie was one of the investors that bought into Petters's scheme. In 2008, Ritchie made a series of loans to Petters and his companies totaling $150 million. One of the loans, $31 million disbursed in March 2008, was allegedly made so that PCI could purchase a bulk order of Sony PlayStations. For the PlayStation transaction, PCI, Ritchie, and M&I entered into a deposit account control agreement, under which M&I agreed to administer a separate account for PCI to collect payments and direct the proceeds to Ritchie. PCI never repaid the loans. In September 2008, Petters's scheme collapsed; a few weeks later, PCI filed for bankruptcy.

Eager to recover some of its losses, Ritchie filed proofs of claim for more than $200 million in PCI's bankruptcy proceedings. The PCI Trustee filed an adversary proceeding against Ritchie in the bankruptcy court to, among other things, have Ritchie's proofs of claim disallowed based on what the Trustee claimed was Ritchie's actual notice of the fraudulent scheme. The PCI Trustee also filed an adversary proceeding against BMO based on M&I's purported role in the fraud, claiming that

M&I and Petters were part of a civil conspiracy and that M&I aided and abetted Petters's fraud and breach of fiduciary duty.

The case before us began in February 2014, when Ritchie sued BMO in New York state court alleging fraud and misrepresentation, aiding and abetting fraud, and civil conspiracy. As the appeal concerns an order granting a motion to dismiss, we recite the facts as alleged by Ritchie. Ritchie claimed that M&I had actual knowledge of Petters's fraud, because the bank knew that retailers were not making payments to PCI and that PCI's stated business model could not have generated the amount of money that was transferred into and out of PCI's accounts. Ritchie also claimed that M&I substantially assisted Petters by entering into deposit account control agreements with investors like Ritchie, who allegedly extended loans to PCI in reliance on M&I's assurances.

BMO removed the suit to federal court, successfully moved to transfer it to the District of Minnesota, and then moved to dismiss for failure to state a claim. In the alternative, BMO requested that the district court abstain from hearing Ritchie's claims in light of the ongoing bankruptcy proceedings. The district court granted BMO's motion to dismiss on abstention grounds, concluding that there was "substantial overlap" between this case and the Ritchie and BMO adversary proceedings. The court reasoned that although the parties and claims in the two cases were not identical, the issues common to both cases—including whether M&I knew about Petters's fraud, whether M&I's conduct amounted to substantial assistance, and whether Ritchie was on actual notice of Petters's fraud—rendered them sufficiently similar to warrant abstention. The district court noted that although Ritchie requested a stay in lieu of dismissal, Ritchie did not explain why a stay would be preferable, so the court dismissed the action.

A few weeks after the district court granted BMO's motion to dismiss, the PCI Trustee and Ritchie settled the Ritchie adversary proceeding. Ritchie received a $163

million unsecured claim against Petters's estate, with a $6 million reduction from whatever amount the estate would otherwise pay on Ritchie's allowed claim. A few days after the settlement, Ritchie wrote to the district court, requesting permission to file a motion for reconsideration and restating its arguments against abstention. The district court denied Ritchie's request, and Ritchie appealed. We review a district court's decision to abstain for abuse of discretion.

II.

On appeal, Ritchie argues that the district court applied the wrong standard for abstention. Ritchie contends that the court erred when it abstained based on the "substantial overlap" between the claims and parties before the district court and those in the ongoing bankruptcy proceedings. According to Ritchie, abstention is appropriate only where one case will fully dispose of the other, so the district court erred when it abstained in favor of bankruptcy proceedings that will not fully resolve all of Ritchie's claims against BMO.

We disagree with Ritchie's proffered standard. The district court properly considered whether the case before it was "duplicative" of the case before the other federal court. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Proceedings are duplicative if the issues in one case "substantially duplicate those raised by a case pending in another court." *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011). To be sure, many federal decisions involving abstention in favor of another federal proceeding have involved identical parties and complaints. *See, e.g.*, *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 926, 932 (8th Cir. 2011); *Selph v. Nelson, Reabe & Snyder, Inc.*, 966 F.2d 411, 412-13 (8th Cir. 1992) (per curiam); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 120-21 (8th Cir. 1985). But the standard does not require precise identity between the parties and actions; abstention can be warranted when proceedings are duplicative because of the overlapping issues and parties. The

district court correctly rooted its "duplicative" determination in the relevant equitable considerations: conservation of judicial resources and comprehensive disposition of litigation. *Colo. River*, 424 U.S. at 817.

The heightened standard for which Ritchie advocates—abstention only if there is a substantial likelihood that the first proceeding will fully dispose of the claims presented in the second proceeding—applies when a federal court confronts a concurrent *state* proceeding. *See United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010). "This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River*, 424 U.S. at 817. The stricter standard for abstention in favor of a state court acknowledges that whether the federal action is stayed or dismissed, the state court proceeding likely will preclude the plaintiff from receiving consideration of its claims in federal court. Because federal-federal abstention cases do not involve this risk of depriving a litigant of a federal forum, the standard for similarity is more flexible.

In determining whether the parallel proceedings were duplicative, the district court concluded that the "parties and the issues being litigated in this case substantially overlap" with those in the BMO adversary proceeding. The court reasoned that the Trustee and Ritchie both seek damages based on the same conduct by M&I. And the court observed that most of the claims are common to both actions, including civil conspiracy and aiding and abetting fraud and breach of fiduciary duty. The district court also identified fact-intensive issues common to both proceedings—whether M&I knew of Petters's fraud, whether M&I's conduct constituted substantial assistance, whether M&I and Petters reached a common understanding to defraud creditors—that both courts necessarily would address in the absence of abstention. The court noted that the Ritchie adversary proceeding also raised fact-bound issues common to both proceedings, such as whether Ritchie had

actual notice of Petters's fraud when it made the loans. The district court acknowledged that the parties to the proceedings in the district court and the bankruptcy court were not identical. But it concluded that because Ritchie and the Trustee both sought to hold BMO accountable for the same conduct by M&I, and because Ritchie is a creditor for the estate that the Trustee administers, the interests of Ritchie and the Trustee were "sufficiently aligned" to render the two proceedings duplicative. These were appropriate considerations in the court's exercise of discretion.[*]

Ritchie argues that abstention is inappropriate because the bankruptcy case will not resolve all of its claims against BMO; these allegations include the fraud-and-misrepresentation claim specific to Ritchie. Ritchie also disagrees with the district court's conclusion that the Trustee's interests are aligned with its own: it argues that the Trustee's complaint against BMO in the bankruptcy court omits critical facts that Ritchie included in its First Amended Complaint; and Ritchie contends that the Trustee faces dispositive defenses, such as *in pari delicto*, which may prevent the Trustee from prevailing in the BMO adversary proceeding.

That the Trustee might not succeed on some of its separate claims, or that some findings may not apply to Ritchie, does not preclude the district court's exercise of discretion. Abstention does not prevent Ritchie from raising any claims left unresolved after the bankruptcy proceedings; questions of issue or claim preclusion can be resolved later by the district court. But by abstaining, the district court will

---

[*]The parties settled the Ritchie adversary proceeding after the district court ruled on the motion to dismiss, but we review the district court's decision based on the state of the record at the time of the ruling. Also after the ruling, the Trustee filed an amended complaint in the BMO adversary proceeding that includes many of the facts to which Ritchie refers, and the bankruptcy court rejected BMO's argument that *in pari delicto* categorically prevents the Trustee from raising the PCI estate's claims against BMO.

avoid the "unnecessary expenditure of scarce federal judicial resources" to address other issues that another federal court may well resolve. *Mo. ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001).

While the district court was within its discretion to abstain, we conclude that the court should have stayed Ritchie's claims rather than dismiss them. A district court's authority to dismiss is circumscribed in cases where the plaintiff seeks purely legal relief, such as damages. The Supreme Court has "applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996). *Quackenbush* addressed abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), based on concerns about protecting state administrative processes, but the decision spoke to prudential limits on federal jurisdiction more generally. 517 U.S. at 716-21. This court applied the rule against dismissal in *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598 (8th Cir. 1999), after a district court abstained in light of ongoing state proceedings under *Younger v. Harris*, 401 U.S. 37 (1971), because "[w]hen monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed." 179 F.3d at 603-04.

Abstention in this case, involving an overlapping proceeding in a federal bankruptcy court, is based on concerns of wise judicial administration, *see Colo. River*, 424 U.S. at 817, but the two cases here were not identical actions involving identical parties that could justify dismissal. *Cf. Blakley*, 648 F.3d at 932; *Orthmann*, 765 F.2d at 121. Where there is potential that Ritchie's claims will not be resolved in the bankruptcy proceeding, we see no reason why the court should have greater authority to dismiss an action for damages here than in a case involving parallel state court proceedings and *Burford* or *Younger* abstention.

BMO complains that Ritchie failed to provide any reason in the district court why a stay would be preferable to dismissal. But even assuming that the court had discretion to dismiss an action for damages, the statute of limitations is always a concern in abstention cases. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). For this reason, we have emphasized a preference for stays over dismissals to preserve any claims that might not be resolved by the parallel proceedings. *See Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 797-98 (8th Cir. 2008). We have implemented that preference even when plaintiffs did not clearly explain why further proceedings in the abstaining court were likely. *See Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882-83 (8th Cir. 2002). Similarly here, we conclude that while the district court appropriately invoked its discretion to abstain, the court should have stayed the action rather than dismiss it.

For these reasons, we affirm the district court's order abstaining from exercising jurisdiction at this time, but we vacate the judgment dismissing the action and remand for further proceedings consistent with this opinion.

_____